United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 11, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 05-60138
_____

UNITED STATES OF AMERICA,

                                    Plaintiff – Appellee,

                    versus

TONY LEWIS HODGES,

                                    Defendant – Appellant.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 4:99-CR-23
_____

Before JOLLY, PRADO, and OWEN, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

    This appeal requires us to decide, for the first time, what requirements must be satisfied for a person on supervised release to waive his right to counsel in a revocation proceeding under Federal Rule of Criminal Procedure 32.1(b)(2). Following the First and Seventh Circuits, we hold that, although the waiver need not meet the formal requirements required by the Sixth Amendment, the waiver must be knowing and voluntary as demonstrated either through a colloquy with the district court, or by the totality of the circumstances, or both. We hold that the totality of the circumstances, including the colloquy with the court, indicates that Hodges's waiver of his right to counsel and his decision to

proceed <u>pro</u> <u>se</u> were knowing and voluntary.  Thus we affirm the judgment of the district court revoking his supervised release.

I

Tony Lewis Hodges was convicted under 18 U.S.C. § 1001(a)(2) of making false statements to a federal officer regarding an incendiary device he placed in the work place of a former girlfriend.  On February 24, 2000, Hodges was sentenced to imprisonment for sixty months, and three years of supervised release.  Hodges completed his term of imprisonment, and began his supervised release on March 30, 2003.

During his release, Hodges dated a young woman for approximately five months.  Shortly after she terminated the relationship in October 2004, Hodges began harassing the young woman by sending partially nude photographs of her over the internet, calling her on the telephone 400-500 times in just over a month, coming onto her property and peering in her windows, and approaching her at work.  As a result, the government sought to revoke Hodges's supervised release, charging him with:  1) felony cyber stalking in violation of Miss. Code Ann. § 97-45-14; 2) four misdemeanor complaints, including two counts of stalking, telephone harassment, and disturbance of a business; and 3) failing to obey the instructions of his probation officer to refrain from contacting the victim and witness in the charged offenses.

The district court appointed the Federal Public Defender as counsel for Hodges, and scheduled a revocation hearing.  On

2

February 8, 2005, just before the hearing began, Hodges's appointed

counsel, Mr. Jupiter, of the federal public defender's office,

informed the court that Hodges wished to proceed <u>pro se</u>.  After a

brief bench conference the following discussion occurred:

> The Court:  Mr. Hodges, a petition has been filed by the probation officer charging you with violations of the terms of supervised release.  Have you received a copy of that petition and gone over it?
>
> Mr. Hodges:  I've read it.  I haven't gotten a personal copy for myself, but I read it.
>
> The Court:  You have a right to have the evidence against you disclosed. . . .  You have a right to counsel in this case, that is a lawyer.  Mr. Jupiter has been appointed to represent you and has prepared for this hearing.  A moment ago he advised that there was some question about that.  Do you want him to represent you in the case?
>
> Mr. Hodges:  I expressed to him a minute ago that I would rather go pro se.
>
> The Court:  All right.  I'm confident that Mr. Jupiter with his law degree and experience as a lawyer is better able to represent you than you are to represent yourself, but you have a right to represent yourself if you want to do that.  Are you telling me that you do not want Mr. Jupiter to represent you?
>
> Mr. Hodges:  Yes, sir.
>
> The Court:  And you're going to do it yourself?
>
> Mr. Hodges:  Yes, sir.
>
> The Court:  Alright, I'm going to relieve Mr. Jupiter of representing you.

3

Mr. Jupiter:  Your Honor, would the court want me as standby counsel?

.   .   .   .

The Court:  Since you are here and prepared, then you may remain at counsel table to answer any questions that he might have, if he has any questions.  Mr. Hodges, you, as I said a moment ago, have the right to have the evidence disclosed against you.  You can cross-examine the witnesses that are brought to testify in the case.  You can present testimony in your own defense, including your own, if you wish to do so.  And I have told you you have the right to counsel, but you have advised me that you do not wish to have a lawyer represent you in the case, and I'm accepting that and agreeing or allowing you to represent yourself.

Mr. Hodges:  Its not a decision I'm making or anything against Mr. Jupiter.  It's just something I thought of myself, basically I've given an opportunity to just try to ask for something that's -- you know, that's pressing on my life that, you know, I would rather just take it to my own hands and have the blame for myself.

The Court:  All right, sir.

The hearing proceeded with Hodges representing himself.  At the close of the evidence Hodges again affirmed his desires to represent himself, explaining, "today I wanted to be my own attorney for the simple fact that I feel like I don't have a whole lot of chances left in order to prove myself, in order to defend myself, in order to stand up for myself . . . ."

At the close of the evidence the district court found that Hodges had committed each of the charged offenses and sentenced Hodges to 12 months of imprisonment followed by 24 months of

4

supervised release.  Hodges now appeals the revocation on the sole basis that the waiver of his right to counsel was invalid due to the failure of the district court to warn him of the pitfalls of self-representation and the benefits of counsel.

II

Hodges raises only one claim:  that the court failed properly to inform him of the dangers of proceeding without counsel and thus his waiver of counsel was unknowing and involuntary.  Our Circuit has had many opportunities to discuss and develop the standard for waiver of a right to counsel in criminal prosecutions, including trial and sentencing.  See, e.g., United States v. Jones, 421 F.3d 359 (5th Cir. 2005) (waiver at trial); United States v. Joseph, 222 F.3d 587 (5th Cir. 2003) (waiver at trial); United States v. Davis, 269 F.3d 514 (5th Cir. 2001) (waiver during trial); McQueen v. Blackburn, 755 F.2d 1174 (5th Cir. 1985) (waiver during trial). However, our cases have not addressed the issue in the context of a revocation proceeding.[1]  Today, our resolution of Hodges's appeal presents two parts:  First, an analysis of the proper standard for waiver of the right to counsel in the revocation setting; and

---

[1] Although United States v. Ross, 503 F.2d 940 (5th Cir. 1974), dealt with the waiver of counsel at a hearing to revoke probation, the court made clear that because of the particular circumstances surrounding the proceeding (circumstances not present here), the "revocation was essentially resentencing." Id. at 944. Consequently, the court declined to articulate the standard for waiver in the revocation context, but rather applied the standards required of a Sixth Amendment waiver in the context of criminal prosecutions. Id. at 944-45.

5

second, an evaluation of Hodges's waiver in the light of that standard.

A

In the context of a criminal prosecution a defendant who waives his right to counsel in favor of self-representation "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with his eyes open." Joseph, 333 F.3d at 590. Thus, some sort of colloquy with the district court is required to "warn the defendant against the perils and disadvantages of self-representation", to assure that the waiver is knowing and voluntary. Davis, 269 F.3d at 518. This requirement is designed to "ensure that the waiver is not the result of coercion or mistreatment," making it clear on the record "that the accused understands the nature of the charges, the consequences of the proceedings, and the practicality of waiving the right to counsel." Joseph, 333 F.3d at 590.

Although warnings by the district court are important, these same cases make clear that "[w]e require no sacrosanct litany for warning defendants against waiving the right to counsel. Depending on the circumstances of the individual case, the district court must exercise its discretion in determining the precise nature of the warning." Id. at 519; see also Jones, 421 F.3d at 363 ("We do not suggest that a district court must follow a script."). To be sure, however, in determining the appropriate warning against self-

6

representation, " the district court must consider various factors, including defendant's age, education, background, experience, and conduct." Joseph, 333 F.3d at 590 (internal citations omitted). These considerations in warning a defendant against self-representation have been applied in the Sixth Amendment context in which a defendant faces the initial criminal prosecution, usually before a jury.

There is, however, a difference between criminal prosecutions, and revocation hearings, such as the one before us today. The Sixth Amendment provides a defendant a constitutional right to represent himself at trial, see Faretta v. California, 422 U.S. 806, 819 (1975). This right to self-representation, however, does not extend to hearings to revoke parole, United States v. Ramirez-Perez, 132 F.App'x. 558, 559 (5th Cir. 2005) (citing Scarpelli, 411 U.S. 778; and Loud v. Estelle, 556 F.2d 1326, 1329 (5th Cir. 1977)), or supervised release, United States v. Moore, 116 F.App'x. 544, 545 (5th Cir. 2004). Instead, self-representation in the revocation context is a matter of discretion vested in the district court. The right to represent himself asserted by Hodges arises not under the Sixth Amendment, but under Rule 32.1(b).[2] We have not addressed the adequacy of a waiver in the Rule 32.1(b) context. Consequently, the question presented in this case is whether, and

---

[2] At argument Hodges's counsel stated that he was urging Hodges's right to counsel only under Rule 32.1(b) and "general notions of due process."

7

to what extent we apply the Sixth Amendment standards to a waiver of the Rule 32.1(b) right to counsel in the context of a revocation proceeding.

The Supreme Court, although not specifically addressing the right to counsel, has made clear that "the loss of liberty" involved in revocation hearings "is a serious deprivation", even though such proceedings are not a part of the criminal prosecution itself. Gagon v. Scarpelli, 411 U.S. 778, 781 (1973) (discussing Morrissey v. Brewer, 408 U.S. 471 (1972)). Yet, while some protection is due, "the full panoply of rights due a defendant [during the criminal prosecution] does not apply to . . . revocation." Morrissey, 408 U.S. at 480. Federal Rule of Criminal Procedure 32.1(b) was promulgated in direct response to the principles set forth in Morrissey and Scarpelli. Designed to achieve proper protection given the unique procedural setting, Rule 32.1 guarantees a defendant in a proceeding to revoke parole, probation, or supervised release, certain procedural protection -- including the right to notice of the right to counsel.[3] See Fed.

_____

[3] Federal Rule of Criminal Procedure 32.1(b) provides:

> (b) Revocation.
>
>    .   .   .   .
>
>    (2) Revocation Hearing. Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to:
>    (A) written notice of the alleged

R. Crim. P. 32.1(b)(2); <u>see</u> <u>also</u> <u>United States v. Correa-Torres</u>, 326 F.3d 18, 22-23 (1st Cir. 2003) (internal citations omitted) (noting that the protections of Rule 32.1 "serve a variety of interests" including "safeguard[ing] the defendant's obvious stake in preserving his liberty", and "the sovereign's more nuanced interest in ensuring that important legal determinations are informed by an accurate account of verified facts."). While this rule helps to clarify the specific rights and procedural safeguards due a defendant at the revocation juncture, it leaves open the question of the appropriate standard by which to measure a defendant's waiver of the Rule's protections.

In addressing this issue in the light of <u>Morrissey</u> and <u>Scarpelli</u>, the First, Second, Seventh and Ninth Circuits have all agreed that waivers of the rights protected by Rule 32.1 must be knowing and voluntary. <u>See</u> <u>Correa-Torres</u>, 326 at 22 ("waiver of [Rule 32.1] rights . . . cannot be effective unless that waiver is

---

violation;
   (B) disclosure of the evidence against the person;
   (C) an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear;
   (D) notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and
   (E) an opportunity to make a statement and present any information in mitigation.

9

made both knowingly and voluntarily"); <u>United States v. Pelensky</u>, 129 F.3d 63, 68 n.9 (2d Cir. 1997) ("a defendant's waiver must actually be knowing and voluntary"); <u>United States v. LeBlanc</u>, 175 F.3d 511, 515 (7th Cir. 1999) (waiver must be "knowing and voluntary"); <u>United States v. Stocks</u>, 104 F.3d 308, 312 (9th Cir.), <u>cert.</u> <u>denied</u>, 522 U.S. 904 (1997) ("the Rule 32.1(b) rights at issue require the application to a waiver of the knowing, intelligent, and voluntary standard"). To determine if a waiver of these rights is knowing and voluntary, both the First and Seventh Circuits have declined to require rigid or specific colloquies with the district court, adopting instead a "totality of the circumstances" standard:

> Ideally, the district court, when confronted with an attempted waiver, will advise the . . . person on supervised release of both the rights afforded him . . . and the consequences of a relinquishment of those rights. Because we are mindful that revocation proceedings are more informal than criminal prosecutions, we do not prescribe any particular mantra. Instead, we . . . hold that, notwithstanding the requirement that waivers of procedural rights with respect to revocation hearings must be knowing and voluntary, such waivers need not be accompanied either by any magic words or by a formal colloquy of the depth and intensity required under Federal Rule of Criminal Procedure 11.

> This protocol has real significance for purposes of appellate review. Where, as here, . . . a person on supervised release mounts a retrospective challenge to the validity of a wavier . . . , a reviewing court should look not only to the punctilio of the sentencing court's colloquy with the probationer, but

10

> also to the totality of the attendant circumstances.
>
> The totality of the circumstances means exactly that – all the circumstances should be considered. . . . These include evidence that sheds light upon the target's comprehension of the charges against him and evidence as to his appreciation of the nature of the rights afforded him by Rule 32.1. In the final analysis, however, courts should beware of assigning talismanic significance to any single fact or circumstance.

Correa-Torres, 326 F.3d at 23; see also LeBlanc, 175 F.3d at 517. Because this "totality of the circumstances" standard will provide a practical truth appropriate for the more informal, non-jury proceeding, we apply this standard. Although a thorough colloquy with the district court may be the most precise means of evaluating the voluntariness of a waiver, the failure of the district court to engage in a comprehensive colloquy is not, of itself, fatal to the defendant's waiver. We thus hold that the waiver of a defendant's Rule 32.1(b) rights is knowing and voluntary (1) where there is a sufficient colloquy by the district court to assure an understanding or freely made waiver; or (2) where the colloquy leaves some uncertainty, the totality of the circumstances assures that the waiver is knowing and voluntary. Given this standard, we turn now to examine Hodges's waiver.

                                    B

Although the district court did inform Hodges of certain legal and procedural rights that he was due, and did express to him the court's belief that Hodges would be better off if represented, it

                                   11

did not engage in a full colloquy expressing the benefits of counsel or the pitfalls of self-representation. Although it is appropriate to consider the district court's expressions of concern about Hodges's ability to represent himself, the colloquy alone is not adequate to demonstrate a knowing and voluntary waiver. Thus we must look at and evaluate the totality of the circumstances.

The facts surrounding Hodges's waiver convince us that he was aware of the consequences of his actions, and that there was no coercion or mistreatment motivating his request to proceed pro se. In reaching this conclusion we rely on the following evidence: First, Hodges was aware of the nature of the charges against him and the penalty he faced. Hodges expressed not only an understanding of the purpose and possible repercussions of the hearing, at one point in the hearing he specifically noted that the facts alleged against him constituted a class B violation under 18 U.S.C. § 3583 for which he could be sentenced under the "advisatory [sic] statutory guidelines".

Second, Hodges had been warned, by the district court, and by his own counsel, that self-representation was not in his best interest. In addition to the district court's comment that Hodges would be much better off with counsel, the record indicates that Hodges had some discussions with his counsel about self-representation prior to informing the district court of his desired waiver. Indeed, Hodges's appointed counsel took time between the bench conference that preceded the hearing and the hearing itself

12

to again warn Hodges of the effect of his proposed waiver and the benefits of counsel.

Third, although clearly not skilled as a legal professional, Hodges was familiar with the criminal process or the rights and procedures surrounding revocation.  By the time of the revocation hearing Hodges had been through several formal court appearances and a jury trial.  These experiences allowed him to see the nature of legal proceedings.  Additionally, the district court, on at least two separate occasions in the proceeding, explained to Hodges his rights relating to the hearing:  specifically, that he could call witnesses, cross-examine witnesses, testify on his own behalf, and know of the evidence against him.

Fourth, Hodges's former counsel had prepared for the hearing and remained available to assist Hodges throughout the proceeding. Early in the hearing the district court instructed Hodges's counsel to remain, and allowed Hodges to consult with his former counsel throughout the hearing.  The transcript of the hearing indicates several points at which Hodges did in fact consult with his former counsel.

Finally, there is no evidence or indicia of coercion, gamesmanship, or improper forces at play in Hodges's decision to represent himself.  Hodges expressed no dissatisfaction with his appointed counsel, nor did he express any other reason or

motivation for self-representation other than a desire to "do this on my own."[4]

Considering the evidence as a whole we find that Hodges's waiver of his right to counsel was knowing and voluntary.

### III

For the reasons stated above we hold that a waiver of the rights provided by Rule 32.1 is effective where it is knowing and voluntary.   In the revocation setting, a waiver is knowing and voluntary where it is either supported by an adequate colloquy with the district court, or by the totality of the circumstances, or both.   Based on the record in this case, we find that the totality of the circumstances, including the colloquy with the court, indicates that Hodges's waiver of his right to counsel at his revocation hearing was knowing and voluntary.   Consequently, the judgment of the district court is

AFFIRMED.

---

[4] Just prior to the hearing Hodges's counsel approached the bench and notified the district court of Hodges's desire to proceed pro se.   Hodges's counsel told the court that he had been unable to secure a witness, Hodges's employer, whom Hodges wanted to testify at the hearing.   Although unsure of Hodges's exact reasoning, Mr. Jupiter speculated that his inability to secure that witness may have motivated Hodges to seek self-representation.  Hodges himself indicated on the record that he was satisfied with his counsel, but wanted to do things on his own.   During the hearing Hodges proffered the testimony of the unavailable witness, and the district court accepted the proffer.