# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-2521

_____

United States of America

*Plaintiff - Appellee*

v.

Ronnie Lee Owen

*Defendant - Appellant*

_____

No. 16-2611

_____

United States of America

*Plaintiff - Appellee*

v.

Ronnie Lee Owen

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: February 6, 2017
Filed: April 19, 2017
_____

Before RILEY,[1] Chief Judge, SMITH and BENTON, Circuit Judges.
_____

RILEY, Chief Judge.

Ronnie Lee Owen asserts the revocation of his supervised release and sentence of 24 months imprisonment were in error because his waiver of counsel and decision to proceed pro se were invalid.[2] We affirm, concluding the totality of the circumstances reflects Owen made a voluntary, knowing, and intelligent choice to represent himself at the revocation hearing. See 28 U.S.C. § 1291 (appellate jurisdiction).

## I.    BACKGROUND

Owen pled guilty in 2010 to knowingly making, uttering, and possessing counterfeit securities in violation of 18 U.S.C. § 513(a) and was sentenced to 66 months imprisonment followed by 36 months supervised release. In 2011, Owen pled guilty to identity theft in violation of 18 U.S.C. § 1028(a)(3) and was sentenced to 36 months imprisonment with 36 months supervised release.[3]

_____

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

[2]Although Owen never moved to waive any right to counsel or affirmatively agreed to proceed pro se, Owen characterizes his decision as an involuntary waiver. Owen does not contend, however, he never actually waived being represented by counsel.

[3]The underlying conduct resulting in both convictions occurred before Owen's 2010 guilty plea. Owen pled guilty to making counterfeit securities in the Southern

Owen found himself unable to keep out of trouble while on supervised release. Between August 24, 2015 and April 13, 2016, Owen's probation officer filed a violation report and four supplemental violation reports alleging over twenty violations of numerous conditions of Owen's release, including: pay the required fine and restitution in compliance with the scheduled payments; answer truthfully to his probation officer's inquiries; find lawful employment; refrain from incurring new debt unless in compliance with his installment payment schedule; refrain from associating with any person convicted of a felony; notify the probation officer of any changes in residence; provide the probation officer access to any requested financial information; and refrain from committing another federal, state, or local crime.

The revocation proceedings on both cases were combined, and Owen had his first revocation hearing before the district court[4] on January 22, 2016. Owen's counsel informed the court Owen was "having some medical issues" and was "struggling to follow what [counsel] was talking to him about." According to Owen, he had a "low thyroid" problem and, despite his retained counsel and wife attempting to get him his medication, the jail where Owen was detained had not provided Owen his "medication for a number of months." Owen claimed this led to "vision difficulties, . . . headaches, and pain." The district court indicated it was having difficulty understanding Owen. The government reported the probation officer was unaware of Owen's need for thyroid medication, and Owen's counsel claimed it was "not uncommon" for his clients in that particular jail not to receive prescribed medication. The district court recognized it was in a "bind" because Owen would remain in jail waiting for the next hearing date and Owen's "probation might as well

District of Mississippi, and pled guilty to identity theft in the Eastern District of Washington. Jurisdiction over Owen was transferred to the Western District of Missouri in August 2015.

[4]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

be revoked if he's just sitting" in jail. The revocation hearing was reset for February 16, 2016.

At this second revocation hearing, Owen's counsel informed the court Owen was receiving his medication but, in Owen's opinion, the medication was not the correct dose and Owen "needed a few more weeks before the medication completely cycled through and stabilized him." The district court expressed its frustration with another continuance, noting because Owen was just sitting in jail "in essence he's giving himself a revocation." The government objected to the continuance, citing a worry that Owen "keeps making up these excuses and feigning an exaggerated illness or lack of medication." Nevertheless, the district court continued the hearing until April 19, and warned Owen "[t]here won't be any more continuances granted."

Disregarding this warning, Owen again requested to continue his third revocation hearing, this time requesting more time to hire new counsel. Owen expressed he had sent "numerous letters" to his retained attorney, but had not seen or heard from him since the prior hearing. Owen stated he was frustrated that "every time [he] come[s] to court, there's an amended violation report and [he's] given no notice." Owen felt he was unable to prepare an adequate defense to the alleged violations, although Owen's attorney had reviewed the reports with him immediately before each hearing. The government indicated a concern Owen was using the request for new counsel as a delay tactic. Owen assured the district court he was only seeking "a proper defense." The district court told Owen's counsel, as "Mr. Trump would say[,] You're fired" and set a fourth revocation hearing for May.

Owen appeared before the magistrate judge for a status conference on May 16. Owen indicated he was aware he had a final revocation hearing set for May 26 and he wanted to obtain new counsel, but was unable to reach the new counsel he had identified to retain. The magistrate judge stated it was in Owen's "best interest" to "have counsel appointed to represent" him at his final revocation hearing, and the

judge would appoint "someone who is very experienced in federal court who would be able to jump in and immediately begin working with [Owen]." The magistrate judge also expressed he believed "everybody would prefer that [Owen] have counsel representing" him and that "it's a bad idea to represent yourself. . . . [I]t doesn't usually end very well for the person who chooses to go that route."

Owen then asked the magistrate judge if he would be able to proceed pro se if he did not like his appointed counsel. In response to this, the magistrate judge told Owen he would "probably have to make inquiry of [Owen] as to certain factors" yet he would "probably strongly urge [Owen] to not do that." The magistrate judge also quoted the "old expression that a person who represents themself has a fool for an attorney," and said, if Owen wished to represent himself, the judge would allow him to do so if the judge made a finding Owen knowingly and voluntarily waived his right to counsel. Owen assured the magistrate judge he had "been through this once before" and was unhappy with his counsel's performance in a prior case. Concerned Owen would be resistant to appointed counsel, the magistrate judge advised Owen he "need[ed] to be prepared to move forward" on May 26, either with appointed counsel or on his own pro se.

At this fourth revocation hearing, Owen appeared with appointed counsel. The appointed counsel reported to the district court Owen told him he had recently filed a bar complaint against the appointed counsel and "that creates an issue for" the appointed counsel regarding "if [he] [could] proceed or not." The district court considered this report a motion to withdraw as counsel. Owen declared his dissatisfaction with his appointed counsel, complaining his counsel declined to pursue any of Owen's suggested defense theories, and Owen claimed he had filed both a bar complaint and a civil suit against his appointed counsel. The district court denied the motion to withdraw as counsel, as Owen "demonstrate[d] a pattern and practice . . . of trying to eventually avoid this day in court."

The district court presented Owen with three options: (1) Owen could "make all the arguments [him]self . . . acting as [his] own attorney"; (2) Owen could "have [his] counsel that [the court had] appointed and paid for . . . serve as [Owen's] attorney"; or (3) Owen could represent himself and have his appointed counsel serve as standby counsel. Owen expressed uncertainty over which option to take, claiming he had "no way of understanding what the violations even are," so he "fail[ed] to see how [he] could participate or assist in [his] own defense. . . [or] represent [him]self." Although Owen's appointed counsel had reviewed the violation reports with Owen, Owen complained he did not have a physical copy in his possession. The district court then granted the motion to withdraw as counsel and told Owen he could proceed pro se with appointed counsel as standby, but it was "the last time [the court was] going to let [Owen] terminate [his] counsel before moving ahead."

Owen replied he did not "recall asking to be pro se." The district court stated it refused "to delay this inevitable hearing" due to the "multiple excuses about why [Owen] want[s] to move off and change counsel." The district court determined, because Owen refused to proceed with appointed counsel, he would proceed pro se with appointed counsel standing by to assist Owen if needed. The government proceeded to summarize the alleged violations, and Owen stated he could not "either admit or deny them because [he hadn't] had time to go over them." In the course of the hearing, Owen cross-examined the government's witnesses, questioned his probation officer regarding inconsistencies between the probation officer's written reports and oral testimony, and objected to a law enforcement officer's testimony as hearsay and violating his right to confront his accusers. When the district court denied his objections, Owen expressed his dissatisfaction that his "hands [were] kind of tied" and he did not have "enough information to formulate questions or even be able to respond properly." Owen declined to take the stand or to put on a defense, pointing to his "limited contact with [the violation] reports" and his lack of an "opportunity to develop a defense" or "to ascertain what witnesses [he] would need," and asserting the

district court had "forced" him to proceed pro se and his "rights ha[d] been so grossly violated."

The district court found Owen had multiple grade-B violations ("constituting any . . . federal, state, or local offense punishable by a term of imprisonment exceeding one year," United States Sentencing Guidelines (U.S.S.G.) § 7B1.1(a)(2)) of his conditions of supervised release and a criminal history category of VI. Owen argued the only grade-B violations were charges that should not be considered because he had not yet "had an opportunity to have [his] day in court," and, because the other violations were only grade-C violations ("constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision," id. § 7B1.1(a)(3)), he requested a sentence of 12 months and one day imprisonment. The district court sentenced Owen to 24 months imprisonment and Owen filed a pro se notice of appeal.

## II.    DISCUSSION

Owen's sole argument on appeal is he did not knowingly, voluntarily, or intelligently waive his right to counsel.[5]  We begin by noting Owen's initial assertion—that, in allowing him to proceed pro se at his revocation hearing, the district court violated his "Sixth Amendment right to waive his right to counsel and conduct his own defense in a criminal case"—is erroneous. The Sixth Amendment right to counsel applies only in a criminal prosecution, and a revocation hearing is an entirely different type of proceeding. See Morrissey v. Brewer, 408 U.S. 471, 480

---

[5]Owen filed a pro se motion to dismiss the alleged violations for lack of jurisdiction and denial of due process after he terminated his retained counsel, but before he was appointed new counsel. The district court orally denied Owen's motion to dismiss at the May 26 revocation hearing, and Owen also appealed this denial. Owen's attorney does not raise this issue in the opening brief and has forfeited this issue on appeal. See Jenkins v. Winter, 540 F.3d 742, 751 (8th Cir. 2008) ("Claims not raised in an opening brief are deemed waived.").

(1972) ("We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply."); United States v. Cranford, 467 F. App'x 541, 542 (8th Cir. 2012) (per curiam) ("[Defendant] did not possess a Sixth Amendment right to counsel in his revocation hearing."). The same constitutional interests are not at stake in a revocation proceeding because "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special . . . restrictions." Morrissey, 408 U.S. at 480.

The only right Owen can assert, then, is statutory. See 18 U.S.C. § 3006A(a)(1)(E) ("Representation shall be provided for any financially eligible person who . . . is charged with a violation of supervised release."); Fed. R. Crim. P. 32.1(b)(2)(D) (requiring, at a revocation hearing, "notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel"); see also United States v. Hodges, 460 F.3d 646, 650 (5th Cir. 2006) ("The right to represent himself . . . arises not under the Sixth Amendment, but under Rule 32.1(b)."). Because a waiver of these rights does implicate Owen's conditional liberty interests, we must examine whether the district court's acceptance of that waiver violated his right to due process. We review the district court's decision for abuse of discretion.[6] See Morrissey, 408 U.S. at 480; United States v. Anderson, __ F. App'x ___, No. 16-2251, 2016 WL 5335035 (8th Cir. Sept. 23, 2016) (per curiam) (evaluating the district court's acceptance of a waiver of right to counsel in a revocation hearing for abuse of discretion); see also United States v. Manuel, 732 F.3d 283, 291 (3d Cir. 2013) ("Although a defendant at a revocation hearing does not have a constitutional right to counsel, a revocation hearing nonetheless presents the risk of

---

[6]Owen asserts we must review the district court's decision de novo, as this is the standard to review waivers of constitutional rights. As noted above, Owen challenges the waiver of a statutory right, not a constitutional one, and thus his challenge is reviewed with a different standard.

a loss of liberty and thereby triggers the requirements of due process in general."). This interest "is flexible and calls for such procedural protections as the particular situation demands." <u>Morrissey</u>, 408 U.S. at 481. "Sixth Amendment cases which elaborate on the requirements for a knowing and voluntary waiver of one's right to an attorney . . . remain relevant in the revocation context. However, we must have in mind that the due process framework . . . is focused on the fundamental fairness of the hearing." <u>United States v. Boultinghouse</u>, 784 F.3d 1163, 1172 (7th Cir. 2015).

Owen first claims his waiver was involuntary because "it was a forced choice between counsel he perceived was unprepared and representing himself." "While the 'Hobson's choice' between proceeding to trial with an unprepared counsel or no counsel at all may violate the right to counsel, there is no constitutional difficulty where the defendant is provided the real alternative of choosing between adequate representation and self-representation." <u>United States v. Mentzos</u>, 462 F.3d 830, 839 (8th Cir. 2006) (citation omitted). Owen perceived his appointed counsel was unprepared—indeed Owen claimed to have filed a bar complaint and civil suit against his appointed counsel—and Owen expressed his displeasure that his appointed counsel disagreed with Owen's chosen defense to the violations. Yet "[a]n accused does not have an absolute right to counsel of his own choosing," <u>id.</u>, and requests for new counsel "will sometimes, perhaps often, be dilatory tactics," <u>Berry v. Lockhart</u>, 873 F.2d 1168, 1171 (8th Cir. 1989). "The substitution of counsel is committed to the sound discretion of the trial court, and the defendant bears the burden of showing justifiable dissatisfaction with appointed counsel to be granted a substitute." <u>Mentzos</u>, 462 F.3d at 839 (citation omitted).

Owen's complaints about his appointed attorney being unprepared and not agreeing with Owen's preferred strategies do not amount to a justifiable dissatisfaction demonstrating the district court abused its discretion in refusing to appoint Owen new counsel, particularly considering Owen had already fired one counsel at a prior revocation hearing. The magistrate judge had assured Owen his appointed counsel

would be "very experienced in federal court" and "able to jump in and immediately begin working with [Owen]." There is no evidence Owen's appointed counsel was unprepared or otherwise incompetent.

Owen previously had expressed reluctance to work with any counsel—the magistrate judge had observed he "d[id]n't know how serious [Owen was] about wanting appointed counsel" and urged Owen "to make every effort to keep an open mind and listen to [his] appointed counsel." Aware of this reluctance, the magistrate judge had warned Owen ten days in advance of his revocation hearing that Owen must be prepared to proceed either with appointed counsel or pro se. Owen had sufficient advance warning he had to make a decision regarding self-representation. The district court's three options presented to Owen (to proceed pro se, to have appointed counsel represent him, or to proceed pro se with appointed counsel as standby) did not create such an impossible "Hobson's choice" as to make his waiver involuntary. The choice was a fair one.

Owen next contends his waiver was not knowing and intelligent because the district court "did not ask questions to make sure that [Owen] understood what he was doing and comprehended the complexities of representing himself." "[A]lthough the waiver need not meet the formal requirements required by the Sixth Amendment, the waiver must be knowing and voluntary as demonstrated either through a colloquy with the district court, or by the totality of the circumstances, or both." Hodges, 460 F.3d at 648; see also Manuel, 732 F.3d at 291 ("No 'particular mantra' is necessary and no 'magic words' are required for the district court to be satisfied that the defendant's waiver is knowing and voluntary." (quoting Hodges, 460 F.3d at 652)). The colloquy required under Faretta v. California, 422 U.S. 806, 835 (1975), for a waiver of the right to counsel in a criminal proceeding is not required in the context of a revocation hearing. See Hodges, 460 F.3d at 652 ("Although a thorough colloquy with the district court may be the most precise means of evaluating the voluntariness of a waiver, the failure of the district court to engage in a comprehensive colloquy is not,

of itself, fatal to the defendant's waiver."). Examining the totality of the circumstances present here, we conclude Owen's waiver was knowing and intelligent.

Factors relevant to the totality of the circumstances include:

"(1) whether and to what extent the district court conducted a formal hearing into [the defendant's] decision to represent himself, (2) whether there is other evidence in the record that establishes that [the defendant] understood the disadvantages of self-representation, (3) [the defendant's] background and experience, and (4) the context of [the defendant's] decision to proceed pro se."

Boultinghouse, 784 F.3d at 1173 (alterations in original) (quoting United States v. Eads, 729 F.3d 769, 775 (7th Cir. 2013)). Although the district court did not conduct any sort of formal hearing, the remainder of the factors weigh toward a knowing and intelligent decision. For one, over a week before the revocation hearing, the magistrate judge had "strongly urged" Owen not to proceed pro se and reminded Owen of the maxim that "a person who represents themself has a fool for an attorney" (often expressed as having a fool as a client). Owen was well aware of the dangers of representing himself.

In addition, Owen's age (47 at the time of the hearing) and his extensive experience with the criminal justice system indicate he was adequately equipped to make the decision to represent himself. Owen had a criminal history category of VI at his original sentencing, was no stranger to court hearings, and had assured the magistrate judge he had "been through this once before." The context of Owen's decision to proceed pro se further demonstrates his knowledge and understanding of the decision. Owen had met with appointed counsel before the revocation hearing to go over the alleged violations, and the government summarized all violations during the revocation hearing, ensuring Owen was well aware of the allegations. Although

Owen never utilized him, Owen's appointed counsel remained to assist Owen if needed. See Hodges, 460 F.3d at 653.

Owen "appreciated what was at stake, understood the nature of the charges, and knew what the factual issues were." Boultinghouse, 784 F.3d at 1175. Owen demonstrated his familiarity with general policies and procedures of hearings, conducting cross-examinations of witnesses, highlighting witness inconsistencies, and making objections. See Hodges, 460 F.3d at 652-53. Despite his claim he did not have an adequate grasp of the nature of the allegations, Owen's understanding of the issues at the hearing was evidenced by Owen's sentencing arguments. He highlighted potential problems of proof with his grade-B violations and recognized the remaining violations were only grade C, requesting a sentence appropriate for grade-C violations. See id. at 652 (noting defendant's awareness of the nature and consequences of violations indicates a knowing and intelligent waiver of counsel).

Certainly, "[t]he omission of any inquiry into and express evaluation of [Owen's] background, education, and sophistication . . . renders the inquiry into his waiver less complete than it ideally ought to have been." Boultinghouse, 784 F.3d at 1175-76. It would have been preferable for the district court to provide "a concrete illustration of why [Owen] might be at a disadvantage without counsel" or "confirm[] that [Owen] appreciated what was at stake in the revocation proceeding." Id. at 1173. "But the record otherwise makes clear that [Owen] was fully able to comprehend the nature of the revocation proceeding, what the issues were, the risks of proceeding without a lawyer, and how to present his own case." Id. at 1176. Owen may now believe his decision to represent himself at his revocation hearing was the wrong choice, but this "does not show that his decision to reject representation was unintelligent. A decision may be informed without being right or smart; many human decisions fall into this category." Id. at 1176-77. The district court did not abuse its discretion in allowing Owen to proceed pro se at his revocation hearing. Owen's revocation hearing was fundamentally fair and not a violation of due process.

## III. CONCLUSION

Because the totality of the circumstances reflects Owen's decision to proceed pro se at his revocation hearing was voluntary, knowing, and intelligent, and not a denial of due process, we affirm.

_____