Filed 8/31/21  P. v. Kirgiorgis CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>PAUL A. KIRGIORGIS,<br><br>　　　Defendant and Appellant. | B302889<br><br>(Los Angeles County<br>Super. Ct. No. 9PH07296) |

　　　　APPEAL from an order of the Superior Court of Los Angeles County, Robert M. Kawahara, Judge.  Affirmed.

　　　　Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor, and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

Paul A. Kirgiorgis, a registered sex offender, was convicted in 2018 of resisting a peace officer.  After serving a prison sentence, he was released on parole.  When he violated a parole condition by disabling his global positioning system (GPS) ankle monitor, the trial court revoked and reinstated his parole, on condition he serve 180 days in county jail.  Kirgiorgis appeals, contending the court improperly denied his request to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).  Because Kirgiorgis abandoned his request, we affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND

Kirgiorgis, who is a registered sex offender,[1] was convicted in June 2018 of resisting or deterring a peace officer by means of force or violence (Pen. Code, § 69)[2] and was sentenced to two years in prison.  He was subsequently released on parole supervision.  As a condition of parole, Kirgiorgis was required to wear a GPS ankle device, which allowed his parole officer to monitor his whereabouts.  Another condition of parole, to which Kirgiorgis agreed, was that he would charge the device for one hour at least two times per day, every 12 hours.

1. *Parole revocation petition and arraignment*

On October 10, 2019, the Division of Adult Parole Operations filed a parole revocation petition alleging that Kirgiorgis had disabled his ankle monitor by failing to charge it,

---

[1]    Kirgiorgis was convicted in January 2014 of indecent exposure in violation of Penal Code section 314.

[2]    All further undesignated statutory references are to the Penal Code.

2

in violation of his conditions of parole.  Parole was preliminarily revoked.

On October 18, 2019, Kirgiorgis appeared for arraignment, and was represented by Deputy Public Defender Douglas Sweet. Kirgiorgis stated he wished to represent himself.  The following colloquy transpired:

"[Kirgiorgis]:  I don't want an attorney to represented [*sic*] me.

"[The Court]:  I'm sorry.

"[Kirgiorgis]:  I don't want an attorney to represented [*sic*] me.

"[The Court]:  You don't want an attorney to represent you?

"[Kirgiorgis]:  No.

"[The Court]:  You want to represent yourself?

"[Kirgiorgis]:  Yeah.

"[The Court]:  Why is that?

"[Kirgiorgis]:  I don't need anybody.  The case is so small. Why you makin' a big deal.

"[The Court]:  But I still don't understand what you're saying.

"[Kirgiorgis]:  You don't speak English?  I said the case is small.  You tryin' to make it so big.

"[The Court]:  That's the first—

"[Kirgiorgis]:  I don't need an attorney, you know.  We can work something out.

"[The Court]:  Yeah, but you can work it out through your attorney.  And it's better you talk through your attorney—

"[Kirgiorgis]:  I don't want to have an attorney.

"[The Court]:  —because if you say something that could be used against you and you go to a hearing, they will use that against you.

"[Kirgiorgis]:  That's okay.  I take the blame.

"[The Court]:  And so—let me ask you, Mr. Sweet.  You've attempted to interview him.  And I don't want to know exactly the conversation, but in terms of the tone.

"[Kirgiorgis]:  He tried to tell me I was wrong.

"[Mr. Sweet]:  I got through 80 percent of the report.  At some point he stated he did not want to speak with me and he wanted to talk to the court.

"[The Court]:  That's all right.  Let me just explain about two things to you; okay.  Okay.  You've not been in this court yet before; right?  Not been before this court right?

"[Kirgiorgis]:  Not in L.A., no.

"[The Court]:  Yeah, okay.  And the violation is not properly charging—

"[Kirgiorgis]:  I didn't violate.  My battery was charged.  That's a lie.

"[The Court]:  So you want to have a hearing?

"[Kirgiorgis]:  I guess so or just—you got a deal for me?

"[The Court]:  I can't give you a deal because it's a mandatory 180 days.  It's mandatory.  I must—if you're found in violation I must give you 180 days.  I have no choice.

"[Kirgiorgis]:  You have no proof.

"[The Court]:  You know what, I'm going to deny your right to represent yourself.  I don't think he's—there's no right to represent yourself, number one.  And I don't think he's appropriate.  So Mr. Sweet is going to continue to represent you, sir.  Based upon our discussion I don't think it's appropriate for

4

[you to] represent yourself.  All right.  So Mr. Sweet is going to continue to represent you.

> "[Kirgiorgis]:  I don't want to be represented by nobody.

> "[The Court]:  So the thing is that he's your attorney today.  So you want to go back and complete your interview?

> "[Kirgiorgis]:  He's not my attorney.

> "[The Court]:  He is your attorney.  You don't have a choice at this point.

> "[Mr. Sweet]:  I'm prepared to enter a plea at this time if the court would accept it.

> "[The Court]:  Okay.  If you're not unwilling to finish your interview, Mr. Sweet—

> "[Kirgiorgis]:  Why [is] he on the case?

> "[The Court]:  I don't know.  Okay."

Defense counsel then entered a denial on the petition and requested a probable cause hearing.  The court informed Kirgiorgis that he would be brought back to court for the hearing.  Kirgiorgis stated, "I'm not fucking up.  They're going to go find a prison" and "They set me up."

2.  *The parole revocation hearing*

On October 23, 2019, Kirgiorgis refused to come to court.  The court ordered he be extracted from his cell, and rescheduled the hearing.

A combined probable cause and contested parole revocation hearing transpired on October 29, 2019.  Kirgiorgis was represented by a different deputy public defender, Thomas Slattery.[3]  He did not renew his self-representation request, and his new attorney did not reference it.

---

[3]    The record does not reflect the reason for attorney Slattery's substitution for attorney Sweet.

5

At the hearing, Kirgiorgis's parole officer testified that when a GPS monitor's battery goes into "low" or "critical" status, it sends an audible tone to alert the wearer. On October 6, 2019, the parole agent was electronically alerted that Kirgiorgis's device's battery had run out. Kirgiorgis was subsequently located at a Starbucks in La Mirada; the monitor was still affixed to his ankle, but the battery was dead. Kirgiorgis was arrested and the device was tested. It charged properly when plugged in. When asked why he had failed to charge the battery, Kirgiorgis stated he "didn't feel like charging and he knew [the parole officer] would find him."

Kirgiorgis testified that he had been living with relatives and would charge the ankle monitor "all the time." The day or two prior to his arrest, his relatives notified parole that Kirgiorgis was not taking his medication; they also called the police. Upset with his family, Kirgiorgis left and spent the night on the street. He charged his device in the outdoor plug of a grocery store, and also charged it twice at Starbucks. He denied that the battery had died; it was charged when he was arrested. It never emitted an audible tone indicating the battery was running down. He believed he was required to charge the device for two hours each day, and he "did more than that." He also believed the device was not charging properly. He did not realize he had to charge the device for an hour, every 12 hours.

The court found true the allegation that Kirgiorgis had disabled his GPS device and was in violation of parole. It revoked and reinstated parole upon Kirgiorgis's completion of a 180-day jail term, with credit for 48 days.

Kirgiorgis filed a timely notice of appeal.

## DISCUSSION

Kirgiorgis contends that the court's denial of his self-representation request violated the Sixth Amendment, a structural error requiring per se reversal. The People argue that Kirgiorgis's request was properly denied because it was "initially equivocal and was subsequently abandoned."**[4]**

1. *Applicable legal principles*

Under the Sixth Amendment to the United States Constitution, a defendant has two mutually exclusive rights at all critical stages of a criminal prosecution: the right to be represented by counsel, and the right to self-representation. (*People v. Marshall* (1997) 15 Cal.4th 1, 20; *People v. Fedalizo* (2016) 246 Cal.App.4th 98, 103–104.) As interpreted by *Faretta*, the Sixth Amendment gives a mentally competent defendant a right to represent himself at trial if his request is timely, unequivocal, voluntary, knowing, and intelligent. (*People v. Johnson* (2019) 8 Cal.5th 475, 499; *People v. Stanley* (2006) 39 Cal.4th 913, 931–932; *People v. Best* (2020) 49 Cal.App.5th 747, 756.) An ambivalent or insincere motion, or one made on a

---

**[4]** We asked the parties for additional briefing on the issue of whether the instant appeal is moot. Appellant clarifies that he is still on parole supervision, which will likely not terminate until 2022, and we accept his representation. Thus, despite the fact that Kirgiorgis has completed the 180-day jail term imposed as a consequence of the parole violation, the appeal is not moot because revocation may have the effect of extending his period of parole. Time during which parole supervision is suspended because a prisoner has been returned to custody as a parole violator is not credited toward his parole period. (§ 3000, subd. (b)(6); cf. *People v. DeLeon* (2017) 3 Cal.5th 640, 645 [appeal from parole revocation order moot where defendant was no longer under parole supervision].)

temporary whim, under a cloud of emotion, in passing anger or frustration, or for the purpose of delay or to frustrate the orderly administration of justice, may properly be denied even if the defendant has said he or she seeks self-representation. (*Marshall*, at p. 23; *People v. Danks* (2004) 32 Cal.4th 269, 295–296; *Stanley*, at p. 932.)  The defendant's technical legal knowledge and his ability to effectively represent himself are irrelevant.  (*People v. Butler* (2009) 47 Cal.4th 814, 824; *Best*, at p. 757.)  A court must draw every reasonable inference against waiver of the right to counsel.  (*Marshall*, at p. 23; *Stanley*, at p. 933; *People v. Ruffin* (2017) 12 Cal.App.5th 536, 545.)  A "court faced with a motion for self-representation should evaluate not only whether the defendant has stated the motion clearly, but also the defendant's conduct and other words.  Because the court should draw every reasonable inference against waiver of the right to counsel, the defendant's conduct or words reflecting ambivalence about self-representation" may support denial. (*Marshall*, at p. 23.)

"In determining on appeal whether the defendant invoked the right to self-representation, we examine the entire record de novo."  (*People v. Stanley*, *supra*, 39 Cal.4th at p. 932.)  The erroneous denial of a valid *Faretta* motion is reversible per se. (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 177, fn. 8; *People v. Boyce* (2014) 59 Cal.4th 672, 702.)

2.  *The court did not err by denying Kirgiorgis's request*

Here, assuming arguendo that a Sixth Amendment right to self-representation exists at a parole revocation hearing,[5] there was no violation of that right in the instant matter.

---

[5]     It is not clear that a parolee has such a right at a parole revocation hearing.  The *Faretta* right to self-representation

8

There is no dispute that Kirgiorgis's self-representation request was timely; he made it during his first appearance in the parole revocation proceeding.

The People argue that Kirgiorgis's comments were equivocal because they were made out of anger and frustration,

derives from the Sixth Amendment (*Faretta*, *supra*, 422 U.S. at p. 819; *People v. Scott* (1998) 64 Cal.App.4th 550, 556, 560), and courts have held that, because a revocation proceeding is not part of the criminal prosecution, the Sixth Amendment does not apply. "[R]evocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." (*Morrissey v. Brewer* (1972) 408 U.S. 471, 480; *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 781; *In re Barnett* (2003) 31 Cal.4th 466, 473 ["the sole constitutional right to self-representation derives from the Sixth Amendment, which pertains strictly to the basic rights that an accused enjoys in defending against a criminal prosecution and does not extend beyond the point of conviction."]; *United States v. Spangle* (9th Cir. 2010) 626 F.3d 488, 494.) Therefore, courts have concluded that the Sixth Amendment right to self-representation, as construed by *Faretta*, does not exist at a parole revocation hearing either. (See *United States v. Spangle*, at p. 494 [although Sixth Amendment indisputably provides criminal defendants with the right to self-representation, it "does not apply to parole revocation proceedings"]; *United States v. Hodges* (5th Cir. 2006) 460 F.3d 646, 650 [Sixth Amendment "right to self-representation . . . does not extend to hearings to revoke parole"]; *United States v. Boultinghouse* (7th Cir. 2015) 784 F.3d 1163, 1165, 1170–1171; cf. *Martinez v. Court of Appeal of California* (2000) 528 U.S. 152, 165 [no Sixth Amendment right to self-representation on appeal].) We need not reach this question, however, because even assuming *Faretta* applied at Kirgiorgis's revocation hearing, the trial court did not err by denying his request.

rather than a genuine desire for self-representation. We need not decide this question because Kirgiorgis's failure to renew his request when he appeared with new counsel at the revocation hearing reflects his abandonment of any *Faretta* request. (See *People v. Dunkle* (2005) 36 Cal.4th 861, 906, disapproved on another ground by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) It is well settled that a "*Faretta* right, once asserted, may be waived or abandoned." (*People v. Dunkle*, at p. 909; *People v. Tena* (2007) 156 Cal.App.4th 598, 609–610.) Such "waiver or abandonment may be inferred from a defendant's conduct" that is inconsistent with the assertion of that right, such as the acquiescence in representation by counsel without further invocation of his *Faretta* rights. (*People v. Trujeque* (2015) 61 Cal.4th 227, 262–263; *McKaskle v. Wiggins*, *supra*, 465 U.S. at p. 183 ["Once a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced."]; *People v. Butler*, *supra*, 47 Cal.4th at p. 825 [*Faretta* right may be waived "by abandonment and acquiescence in representation by counsel"]; *People v. Stanley*, *supra*, 39 Cal.4th at p. 929; *People v. D'Arcy* (2010) 48 Cal.4th 257, 285; *People v. Fedalizo*, *supra*, 246 Cal.App.4th at p. 104; *People v. Rudd* (1998) 63 Cal.App.4th 620, 631 ["the Sixth Amendment self-representation right does not exist when a defendant prior to or during trial acquiesces in the assignment or participation of counsel in the defense."].) The standard for waiving the right to self-representation is "substantially less stringent than it is for waiving the right to counsel." (*People v. Fedalizo*, at p. 104.)

In line with the well-settled requirement that we must draw every reasonable inference against waiver of the right to counsel (*People v. Marshall*, *supra*, 15 Cal.4th at p. 23; *People v. Stanley*, *supra*, 39 Cal.4th at p. 933), we conclude Kirgiorgis agreed to or at least acquiesced in representation by a new attorney at the revocation hearing. At the hearing, neither Kirgiorgis nor his new counsel brought up the issue of self-representation. If Kirgiorgis seriously wished to represent himself, he could have informed new counsel of that request and counsel could have renewed the *Faretta* request, or at least apprised the court that he was appearing for Kirgiorgis against his wishes. (See *People v. Tena*, *supra*, 156 Cal.App.4th at p. 609 [attorney who represented defendant after denial of *Faretta* request did not indicate he was appearing only because the request had been denied].)

*People v. Stanley*, *supra*, 39 Cal.4th 913, is instructive. There, the defendant made a conditional self-representation request, which the court denied. Thereafter, he accepted the appointment of two attorneys. (*Id.* at pp. 930–931.) *Stanley* reasoned that the request was properly denied for two reasons: first, it was not fully knowing and intelligent; and second, it was abandoned. The court explained: "in light of defendant's subsequent acceptance of several appointed counsel to represent him, both at the preliminary hearing and throughout the ensuing trial, without renewing his request for self-representation, we . . . conclude he must be found to have ultimately waived or abandoned his asserted right of self-representation." (*Id.* at p. 929.)

Kirgiorgis contends that renewal of his self-representation request would have been futile. (See *People v. Dent* (2003) 30

Cal.4th 213, 219.) However, the trial court's statements here were not as definitive as in *Dent*. In *Dent*, the court's denial of a self-representation request "foreclosed any realistic possibility defendant would perceive self-representation as an available option." (*Id.* at p. 219.) There, the defendant's appointed counsel failed to arrive on time for the first day of trial. (*Id.* at p. 216.) In light of counsel's repeated requests for continuances and failure to appear, the trial court relieved counsel and continued the trial. The court explained " 'These are all very, very serious charges. And I think that you should definitely have attorneys here to represent you that have the time to spend on a case.' " (*Id.* at p. 216.) It continued, " 'You must be represented by attorneys that are senior trial attorneys. And you have got to have people here to represent you. You cannot represent yourself in this matter.' " (*Ibid.*) When the defendant asked to respond, the court prevented him from doing so without counsel present. (*Ibid.*) When the tardy counsel arrived at the courtroom, defendant informed the court, through counsel, that he preferred to proceed with that attorney or, alternatively, would rather represent himself than receive new attorneys. The court stated, " 'I am not going to let him proceed pro. per. . . . Not in a death penalty murder trial.' " (*Id.* at p. 217.) New counsel were appointed, and the defendant did not renew his *Faretta* request. (*Ibid.*) *Dent* concluded that even if Dent's request had been equivocal, the trial court's response effectively prevented him from making an unequivocal invocation. (*Id.* at p. 219.)

Here, the court's comments were far more cursory. Moreover, the court stated that attorney Sweet was "your attorney *today*," and Kirgiorgis did not "have a choice *at this point*." (Italics added.) These aspects of the court's comments did

12

not foreclose a future request, especially when Kirgiorgis was subsequently represented by a new attorney.  Kirgiorgis's comments indicate he was not reluctant to speak up, assert his perceived rights, and make his wishes known.  (See *People v. Tena*, *supra*, 156 Cal.App.4th at p. 610 [noting defendant's "demonstrated proclivity" to speak for himself].)  The logical inference from the record is that, upon being appointed new counsel, Kirgiorgis reconsidered and abandoned any desire to represent himself.

**DISPOSITION**

The order is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EDMON, P. J.


We concur:



LAVIN, J.



EGERTON, J.