# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1175
_____

United States of America

*Plaintiff - Appellee*

v.

Orlando Preston, also known as Nizza P. El, also known as Black, also known as Pookie

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 19, 2022
Filed: October 5, 2022

_____

Before LOKEN, ARNOLD, and BENTON, Circuit Judges.

_____

ARNOLD, Circuit Judge.

During proceedings to determine whether Orlando Preston had violated the conditions of his supervised release, Preston asked the district court[1] to allow him to

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

appear without a lawyer. The court granted his request and, after a hearing, revoked Preston's supervised release and sentenced him to thirteen months' imprisonment. Preston maintains on appeal that the court erred in granting his request. We disagree and affirm.

In 2014 Preston pleaded guilty to conspiracy to defraud, *see* 18 U.S.C. § 371, mail fraud, *see id.* § 1344, and operation of a chop shop, *see id.* § 2322(a)(1). He was sentenced to five years in prison followed by three years of supervised release. We affirmed that judgment on appeal. *See United States v. Preston*, 598 F. App'x 465, 466 (8th Cir. 2015) (unpublished per curiam). While he was on supervision after completing his prison term, Preston's probation officer filed a revocation petition alleging that he had violated the conditions of his release by failing to report that he had been arrested, failing to report to his probation officer as directed, failing to submit to drug testing, and failing to pay restitution as the court had ordered. The district court appointed attorney James Miller to represent Preston.

Miller later moved to withdraw from his representation, explaining that Preston had informed him "that he no longer desired him as his attorney and instructed him to withdraw." At the revocation hearing Preston explained that he wanted Miller to serve as standby counsel, similar to the one who had assisted him during pretrial proceedings in his underlying criminal case. He envisioned that Miller would "help me with my defense as far as explaining certain things to me that I don't know nothing about because I've never went through this." Preston said that he understood that he would be representing himself in such a situation and affirmed that he understood "everything that's involved in representing" himself. So the court tentatively granted the motion to withdraw but, rather than "formally appointing" Miller as standby counsel, the court asked him "to stay in case I decide to appoint you as standby counsel."

The court then turned to Preston and remarked that he had represented himself before and was "fully capable of doing so." The record shows that Preston had represented himself with the assistance of standby counsel for over six months during pretrial proceedings in his underlying criminal case. The court warned Preston "that it's not in your best interest to represent yourself," that "[i]t's always better to have a lawyer who speaks for you," and it informed him that the court could appoint a lawyer at no expense to him. Preston also affirmed that he understood he had to comply with the rules if he represented himself.

The court then recited the allegations against Preston and told him generally how the revocation hearing would proceed. During that explanation the court again advised Preston that he could be represented by an attorney who could subpoena witnesses and cross-examine the government's witnesses. It also advised Preston that he could, but was not required to, testify himself and that the government would succeed if it proved the allegations by a mere preponderance of the evidence rather than beyond a reasonable doubt. Preston confirmed that he understood what the court had said and that he still wanted to represent himself. After this colloquy, the court determined that Preston was "competent to do this and certainly understands his rights and is capable of representing himself if he wants to and he has a right to do that under the Constitution."

When the hearing shifted to the merits of the revocation petition, the government called Preston's probation officer to the stand. Preston objected to certain responses during direct examination and conducted cross-examination. Preston then testified himself. The court ultimately found that he had violated some conditions of his release, including his failure to report to his probation officer as instructed, failure to report for drug testing on ten occasions, and failure to pay restitution as ordered. But it also expressly declined to find that he had violated the condition related to notifying the probation officer of his arrest.

We review the district court's decision to let Preston proceed pro se for an abuse of discretion. *See United States v. Owen*, 854 F.3d 536, 542 (8th Cir. 2017). A defendant charged with violating the conditions of supervised release has a statutory right to counsel. *See id.* at 541; *see also* 18 U.S.C. § 3006A(a)(1)(E). If the defendant waives that right, we must ensure that the district court's acceptance of that waiver satisfies due process. *See United States v. Ivers*, 44 F.4th 753, 756 (8th Cir. 2022). To satisfy due process, the waiver "must be knowing and voluntary as demonstrated either through a colloquy with the district court, or by the totality of the circumstances, or both." *See id.*

Preston maintains on appeal "that his waiver of counsel was not voluntarily, knowingly, or intelligently made." The totality of the circumstances show otherwise. Preston represented himself during the underlying criminal case and so was already familiar with the advantages of representation that he was foregoing. The district court nevertheless reiterated many of those advantages during its colloquy with Preston and recommended that Preston keep Miller on, and it explained the features of revocation proceedings.

Preston maintains that his decision was not voluntary because "unlike the three options given to the defendant in *Owen*, that is to say, the option to proceed *pro se*, proceed with appointed counsel, or proceed with standby counsel, Preston was left with only one option—to proceed *pro se*." For one thing, the record shows that the court did not deny Preston his right to proceed with appointed counsel; if anything, it shows that the court encouraged Preston to proceed with Miller as counsel. A "district court does not violate the right to counsel when it gives a defendant the choice between adequate representation and self-representation," *see Ivers*, 44 F.4th at 756, and Preston does not allege that Miller was inadequate. In addition, Preston has no right to standby counsel, as that option is available at the district court's discretion. *See United States v. Lamm*, 5 F.4th 942, 950 (8th Cir. 2021).

-4-

Preston also points out that, while representing himself during pretrial criminal proceedings, he submitted several filings that "non-sensically challenge[d] the authority and jurisdiction of the district court over Preston," which led to the court appointing counsel for him. He also says that the district court knew that he "may not have been fully capable of representing himself" because he had previously urged that "his status as a Moorish-American national" affected the court's jurisdiction. These filings and beliefs, he contends, "demonstrate an inability to understand the complexities and disadvantages of self-representation."

We reject Preston's contention. Though his beliefs might be somewhat unorthodox, they are apparently shared by many and not necessarily the product of a mind incapable of waiving rights knowingly and voluntarily. *See United States v. James*, 328 F.3d 953, 955–56 (7th Cir. 2003). In fact, the record suggests that Preston ably represented himself during the hearing. Though he ultimately failed to stave off revocation of his release, he largely operated within the rules and even secured a determination that one of the allegations against him was unsupported.

In sum, we believe Preston has not demonstrated reversible error but merely buyer's remorse for his decision to proceed pro se.

Affirmed.

_____