**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-4314**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

ERIC ARTHUR WALTON,

        Defendant – Appellant.

---

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.  John Preston Bailey, District Judge.  (5:94-cr-00021-JPB-JPM-1)

---

Argued:  December 13, 2024                Decided:  July 28, 2025

---

Before GREGORY, THACKER, and RUSHING, Circuit Judges.

---

Affirmed by published opinion.  Judge Rushing wrote the majority opinion, in which Judge Thacker joined.  Judge Gregory wrote an opinion concurring in part and dissenting in part.

---

**ARGUED:**  Brendan S. Leary, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Wheeling, West Virginia, for Appellant.  Jennifer Therese Conklin, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.  **ON BRIEF:** William Ihlenfeld, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

RUSHING, Circuit Judge:

The President of the United States commuted Eric Walton's life sentence. But within a year of leaving prison, Walton was caught possessing drugs and transporting drug proceeds in violation of the terms of his supervised release. At Walton's request, the district court permitted him to represent himself in the supervised release revocation proceedings. After a hearing, the court revoked his release and imposed a sentence of 60 months' imprisonment. Walton appeals, faulting the district court for letting him represent himself, arguing that the court lacked jurisdiction over his "presidentially commuted sentence," and claiming the court imposed a plainly unreasonable revocation sentence. We disagree with Walton on all fronts and so affirm the district court's judgment.

## I.

## A.

Walton has spent most of his adult life in federal prison for selling illegal drugs. As relevant here, he was convicted in July 1994 of conspiracy to distribute marijuana, conspiracy to commit money laundering, two counts of interstate travel to aid in racketeering, one count of money laundering, and one count of aiding and abetting in the possession with intent to distribute marijuana within 1,000 feet of a school. Because of his prior record of drug-related offenses, he was sentenced to life imprisonment to be followed by ten years of supervised release.

Shortly thereafter, Walton was convicted of conspiring to corruptly endeavor to influence, intimidate, or impede a petit jury and aiding and abetting an attempt to influence

2

a petit juror. He was sentenced to 60 months' imprisonment and three years of supervised release, to be served consecutively to his prior sentence and term of supervised release.

On January 19, 2017, President Barack Obama commuted Walton's total sentence by an executive grant of clemency, which stated:

> I hereby further commute the total sentence of imprisonment imposed upon Eric Arthur Walton, Reg. No. 21074-001, to a term of 387 months' imprisonment, leaving intact and in effect the 13-year term of supervised release with all its conditions and all other components of the sentence.

J.A. 34. The conditions of Walton's supervised release that remained "intact and in effect" prohibited him from committing another crime, illegally possessing a controlled substance, or leaving the district without permission from his probation officer.

On May 14, 2021, Walton completed his commuted sentence of imprisonment and returned to Wheeling, West Virginia to begin serving his 13-year term of supervised release. But in less than a year he was again crosswise with the law. On February 8, 2022, Walton was cited for speeding while driving a rental car in Missouri. Later the same day, an officer in Kansas stopped Walton for speeding, and the officer's dog alerted to the presence of drugs. The officer then searched Walton's vehicle and seized $26,000 in cash stuffed inside a teddy bear and a "suspected drug ledger/owe sheet" that showed money owed to Walton in the range of $200,000. J.A. 73. Walton later informed the officer that he was collecting old drug debts and the $26,000 comprised money owed to him before he went to prison decades earlier. He confirmed he was still in touch with his prior contacts in the cartel, and his call history revealed phone calls to numbers in Mexico and Colombia. One of Walton's phones also contained photos of large amounts of marijuana.

3

Walton was charged with three offenses in Kansas state court, and he pled guilty to criminal transportation of drug proceeds in violation of Kansas Statute § 21-5716(b), a felony. The Kansas court sentenced Walton to 20 months' imprisonment, suspended, and 12 months of probation.

Immediately following Walton's arrest in Kansas, West Virginia State Police obtained a search warrant for his apartment in Wheeling, where they seized 13.5 pounds of marijuana—valued at $27,000—and digital scales. Walton was charged in Ohio County, West Virginia with possession with intent to distribute marijuana, in violation of West Virginia Code § 60A-4-401(a)(i).

### B.

Based on Walton's criminal conduct, his federal probation officer petitioned the United States District Court for the Northern District of West Virginia to revoke his supervised release, listing seven violations of the terms of release. In August 2022, the probation officer amended the petition to add an eighth violation for Walton's Kansas conviction for transporting drug proceeds. The amended petition listed six violations for committing another federal, state, or local crime, one for illegally possessing a controlled substance, and another for leaving the district without permission. In narrative form, the petition recounted Walton's speeding ticket in Missouri, his arrest and conviction in Kansas, and the seizure of marijuana and scales from his residence in West Virginia. The relevant arrest records and incident reports were appended to the petition.

Consistent with Chapter Seven of the Sentencing Guidelines, the amended petition graded each violation, ranging from Grade A (most serious) to Grade C (least serious).

4

Violations five and eight, each identified as "[c]ommission of a new offense," were Grade A violations. J.A. 107, 110. Based on that grading, the violation worksheet calculated an advisory sentencing range of 51 to 63 months' imprisonment in Walton's drug conspiracy case and 30 to 37 months' imprisonment in his jury tampering case.

Walton made his initial appearance before the district court on September 13, 2022. Thereafter, the court appointed counsel for Walton. But in November 2022, Walton filed a pro se motion entitled "Motion of Judicial Notice Proceeding Pro Se and Requesting Expeditions Resolve to Pending Supervised Release Allegations" informing the district court "of his intention to proceed without legal representation during the entire supervised release violation process, as is his constitutional right." J.A. 113. In his motion, Walton correctly explained that the statutory maximum term of imprisonment for his supervised release violations was 60 months, citing 18 U.S.C. § 3583(e)(3). Walton further argued that his Kansas conviction for transporting drug proceeds qualified only as a Grade B violation with a Guidelines policy statement range of 21 to 27 months. He did not mention the West Virginia charge for possession with intent to distribute. Walton also questioned the district court's jurisdiction, urging the court to "take notice that [he] is no longer serving a 'judicial sentence,' but a 'presidentially commuted one,'" citing *United States v. Surratt*, 855 F.3d 218 (4th Cir. 2017) (en banc).

In late November, a magistrate judge conducted Walton's preliminary revocation hearing, where he remained represented by appointed counsel. Shortly before his final revocation hearing in April 2023, however, Walton's appointed counsel moved to withdraw from the representation. In his motion, appointed counsel explained that Walton

5

had communicated his desire to proceed pro se at the hearing and that, when counsel twice attempted to visit Walton in custody, Walton "refused to speak with" him both times. J.A. 119. The district court granted the motion to withdraw but appointed new counsel from the Office of the Federal Public Defender.

Walton and his newly appointed assistant federal public defender appeared at a final revocation hearing on April 27, 2023. At the outset, appointed counsel expressed confusion over his role: "I've been appointed by the Court to represent Mr. Walton, and I don't know what the Court's preference is with regard to pro se or stand-by, so I'll just note my appearance and that Mr. Walton is present in the courtroom." J.A. 126. After Walton waived recitation of the amended revocation petition, the district court attempted to clarify Walton's pro se request:

> THE COURT: How do you want to proceed? Do you want to proceed with or without counsel?
>
> WALTON: Without counsel. Stand-by counsel, yes, sir.
>
> THE COURT: All right. Well, then I'll ask you whether you admit the violations set forth in the amended petition for revocation of supervised release.

J.A. 127. Before admitting the violations, Walton explained that he "asked the original attorney to file a brief on the issue of jurisdiction" related to his purported "presidential sentence" but that he "wanted to represent [himself] pro se, because [he] couldn't get the attorney to perfect a brief." J.A. 127–130. He explained that he was "very capable of representing [himself]":

> I've went through three federal trials here in the Northern District of West Virginia over the years. I did hundreds of appellate briefs, 2255s, won

release for a quite a few people in the federal system. The 30 years that I
spent incarcerated for marijuana, all I did was run the law libraries at these
facilities, so I know basically how to research and how to do law.

J.A. 129. Walton conceded jurisdiction was his "only argument" because "there's no
question [he] was in Kansas" and "was arrested with money." J.A. 128.

After hearing from Walton, the district court reviewed *Surratt* and rejected Walton's
jurisdictional objection. The district court then asked Walton whether he admitted the
violations in the amended petition, and he responded, "[y]es, sir, Your Honor, I do." J.A.
131. In response to the court's invitation to address sentencing, Walton observed that "the
facts speak for themselves," given his "long history" in "every federal courthouse in the
Northern District of West Virginia." J.A. 132. The district court acknowledged Walton
had "four federal convictions" and did not "really give any indication of stopping." J.A.
132–133. Appointed counsel interjected, again expressing confusion about his role. In
response, the district court clarified, "[y]ou are stand-by counsel and do not have an ethical
duty until this hearing is over, at which case you will be appointed as full counsel and you
can file the notice of appeal on Mr. Walton's behalf." J.A. 136.

The Government, for its part, requested a sentence "at the high end" of the
Guidelines range because, after his sentence was commuted, Walton picked up "back
where he left off" and "got into the same exact thing over again," showing "that he is not
willing to conform his behavior to what is appropriate in society." J.A. 136–137. The
Government specifically noted that Walton "was in possession of controlled substances in
Wheeling, West Virginia." J.A. 137.

7

"Based upon Mr. Walton's admissions," the district court revoked Walton's supervised release and sentenced him to 60 months' imprisonment followed by five years of supervised release in the drug conspiracy case, and 24 months' imprisonment in the jury tampering case, to run concurrently. Walton timely appealed, and we have jurisdiction. *See* 28 U.S.C. § 1291.

## II.

We first must address Walton's challenge to the district court's jurisdiction, which presents a question of law we review de novo. *See United States v. Barton*, 26 F.3d 490, 491 (4th Cir. 1994). Walton contends that, after the commutation, he was serving a "Presidentially commuted sentence, not a judicially imposed sentence," Opening Br. 27, therefore the district court—and the entire judicial branch—lacked jurisdiction to revoke his supervised release. That is incorrect. The commutation order's plain language dooms Walton's theory from the start. *See Andrews v. Warden*, 958 F.3d 1072, 1078 (11th Cir. 2020) ("The text of [the] commutation order governs our review."). Specifically, the commutation order left "intact and in effect [Walton's] 13-year term of supervised release with all its conditions and all other components of the sentence." J.A. 34. Walton does not, and cannot, rebut that unambiguous directive.

Instead, Walton attempts to draw support from a concurring opinion in *United States v. Surratt*, which opined that this Court lacked jurisdiction to alter a defendant's sentence of imprisonment after a presidential commutation. 855 F.3d 218, 219–220 (4th Cir. 2017) (en banc) (Wilkinson, J., concurring). In *Surratt*, the defendant had been sentenced to a mandatory term of life imprisonment without release. *See United States v. Surratt*, 797

8

F.3d 240, 245 (4th Cir. 2015). While Surratt's habeas petition was pending before the en banc Court, President Obama commuted his sentence, and we then dismissed the appeal as moot. *Surratt*, 855 F.3d at 219. In his concurring opinion, Judge Wilkinson further reasoned that, "[a]bsent some constitutional infirmity in the commutation order," a court "may not readjust or rescind what the President, in the exercise of his pardon power, has done." *Id.* (Wilkinson, J., concurring).

Walton's situation is meaningfully different from *Surratt*. Here, the President's commutation order specifically left "intact and in effect the 13-year term of supervised release with all its conditions." J.A. 34. The order did not alter the judicially imposed term of supervised release in any respect. And Walton does not collaterally attack the supervised release term the President left in place. Enforcing the preexisting conditions of Walton's supervised release, therefore, did not require the district court to "readjust or rescind what the President . . . has done" or "supersede a presidential . . . commutation with a contravening order of [the court's] own." *Surratt*, 855 F.3d at 219–220 (Wilkinson, J., concurring). To the contrary, the district court retained its jurisdiction over Walton's supervised release and acted entirely within its own realm when it revoked his release based on violations of those conditions.

## III.

We next turn to Walton's contention that the district court erred by allowing him to proceed pro se. In particular, Walton asserts that the court did not conduct "an adequate inquiry" to determine whether his request to represent himself was "clear and unequivocal" and "made knowingly and intelligently." Opening Br. 23.

9

A.

At the outset, the parties dispute the standard of review. Walton claims we review de novo a "defendant's forfeiture of his [Sixth Amendment] right to appointed counsel," Opening Br. 23, while the Government argues we review "the waiver of right to counsel in a supervised release revocation for abuse of discretion," Resp. Br. 18. The Government has the better argument.

Courts have long recognized that "supervised release revocation proceedings are not considered part of a criminal prosecution." *United States v. Ward*, 770 F.3d 1090, 1097 (4th Cir. 2014) (citing cases); *see also Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) ("[R]evocation of parole is not part of a criminal prosecution."); *Gagnon v. Scarpelli*, 411 U.S. 778, 781–782 (1973) ("Probation revocation, like parole revocation, is not a stage of a criminal prosecution . . . ."). Accordingly, "the full panoply of constitutional protections afforded a criminal defendant is not required for the revocation of supervised release." *United States v. Woodrup*, 86 F.3d 359, 361 (4th Cir. 1996); *see also Morrissey*, 408 U.S. at 480. Among others, the Sixth Amendment right to counsel does not apply to revocation proceedings. *See United States v. Meeks*, 25 F.3d 1117, 1123 (2d Cir. 1994), *abrogated on other grounds by Johnson v. United States*, 529 U.S. 694 (2000); *see also Gagnon*, 411 U.S. at 790 (rejecting a constitutional right to counsel in probation revocation proceedings). By extension, an offender does "not have a Sixth Amendment right to proceed pro se during the course of [revocation] proceedings." *United States v. Hamilton*, 360 Fed. App. 424, 426 (4th Cir. 2010) (citing *United States v. Hodges*, 460 F.3d 646, 650–651 (5th Cir. 2006)). Rather, the right to counsel in revocation proceedings comes from Federal Rule of

Criminal Procedure 32.1, which instructs a district court to notify the offender that he may retain counsel or request that counsel be appointed. Fed. R. Crim. P. 32.1(b)(1)(B)(i), (b)(2)(D); *see also* 18 U.S.C. § 3006A(a)(1)(E) (directing that counsel be made available for an indigent person "charged with a violation of supervised release").

Given the limited nature of the right and the nature of revocation proceedings more generally, when a district court *denies* an offender's request to proceed pro se during such proceedings, we have reviewed for abuse of discretion. *United States v. Missouri*, 384 Fed. App. 252, 252 (4th Cir. 2010) (citing *Gagnon*, 411 U.S. at 790 (stating "that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion")); *see also Ward*, 770 F.3d at 1097–1098 (describing the nature of supervised release revocation proceedings). For the same reasons, we think an abuse of discretion standard should apply when a court *grants* an offender's request to proceed pro se. Our sister circuits agree. *See Hodges*, 460 F.3d at 650 (explaining that "self-representation in the revocation context is a matter of discretion vested in the district court"); *United States v. Boultinghouse*, 784 F.3d 1163, 1772 (7th Cir. 2015) (favorably citing *Hodges* and explaining that "[o]ur review of the district court's decision on that score is commensurately deferential"); *United States v. Owen*, 854 F.3d 536, 542 & n.6 (8th Cir. 2017) (evaluating the district court's acceptance of a waiver of the right to counsel in a revocation hearing for abuse of discretion and rejecting a de novo standard).

A waiver of Rule 32.1 rights, including the right to retain or request counsel, must be "knowing and voluntary" under "the totality of the circumstances." *United States v. Farrell*, 393 F.3d 498, 500 (4th Cir. 2005); *see Missouri*, 384 Fed. App. at 252. On

11

appellate review, we consider "'all the circumstances,'" including the colloquy with the district court as well as any other "'evidence that sheds light upon the target's comprehension of the charges against him and . . . his appreciation of the nature of the rights afforded him by Rule 32.1.'" *Hodges*, 460 F.3d at 652 (quoting *United States v. Correa-Torres*, 326 F.3d 18, 23 (1st Cir. 2003)); *see id.* at 648 (holding that "the waiver must be knowing and voluntary as demonstrated either through a colloquy with the district court, or by the totality of the circumstances, or both"). "Rigid compliance with a strict colloquy is not required," so long as the totality of the circumstances demonstrates that the offender made a knowing and voluntary choice to proceed without counsel. *Boultinghouse*, 784 F.3d at 1172; *see also Owen*, 854 F.3d at 543 (finding "a knowing and intelligent" waiver although "the district court did not conduct any sort of formal hearing").

## B.

With these principles in mind, the totality of the circumstances confirms that Walton made a knowing and voluntary choice to represent himself. The district court did not abuse its discretion.

To start, Walton does not allege a violation of Rule 32.1's procedural safeguards. He does not claim that the court failed to advise him that he could retain or request counsel. To the contrary, the sequence of events reflects that Walton knew counsel had been appointed (twice) before he chose to go it alone at his final revocation hearing. And his second appointed counsel was present in the courtroom for that hearing. Walton made his decision "knowing not only that the district court was prepared to provide counsel to him

12

but that an experienced defense attorney was, in fact, standing by in the courtroom to serve as a resource for him." *Boultinghouse*, 784 F.3d at 1172.

Walton's pro se motion and his presentation at the final revocation hearing demonstrate he "understood [what] was at stake" and had "a sufficient grasp of . . . [the] consequence of the waiver." *Id.*; *see Hodges*, 460 F.3d at 652 (evaluating whether the defendant understood "the purpose and possible repercussions of the [revocation] hearing"). In his pro se motion, Walton acknowledged his maximum "statutory exposure of 60 months" in prison and argued that the facts alleged against him constituted a Grade B violation, which would result in a lower Guidelines range. J.A. 114. At the hearing, Walton assured the court he was "very capable of representing [him]self," based on decades of assisting other inmates with their cases. J.A. 129. His own history in the federal criminal system, not to mention the "hundreds of appellate briefs [and] 2255s" he "did" for other "people in the federal system," confirm Walton's familiarity with the value of an attorney and the pitfalls of proceeding pro se. J.A. 129.

We also see no merit in Walton's suggestion that his waiver was unclear. In response to the court's question, Walton said he wished to proceed "[w]ithout counsel. Stand-by counsel, yes sir."[1] J.A. 127. He then launched into his "argumentation about representing [him]self," J.A. 128, explaining he "wanted to represent [him]self pro se,

---

[1] "[A] pro se defendant has no right to standby counsel when he chooses to proceed pro se." *United States v. Beckton*, 740 F.3d 303, 307 (4th Cir. 2014). The district court nevertheless made appointed counsel available to Walton on a stand-by basis throughout his final revocation hearing.

13

because [he] couldn't get the attorney to" make his jurisdictional argument, J.A. 130. At no point did Walton express hesitation about proceeding pro se.

In sum, Walton voiced his desire to represent himself at least three times—in a motion, to appointed counsel, and directly to the court. The record is unambiguous. And because the totality of the circumstances shows Walton made his decision knowingly and voluntarily, the district court did not abuse its discretion in granting his request.

## IV.

We now consider Walton's challenge to his revocation sentence. We will affirm a revocation sentence if it is within the applicable statutory range and not plainly unreasonable. *United States v. Crudup*, 461 F.3d 433, 439–440 (4th Cir. 2006). To determine whether a revocation sentence is plainly unreasonable, we first assess whether it is procedurally or substantively unreasonable, under a "deferential appellate posture." *United States v. Moulden*, 478 F.3d 652, 656 (4th Cir. 2007) (internal quotation marks omitted); *see United States v. Slappy*, 872 F.3d 202, 207 (4th Cir. 2017). "A revocation sentence is procedurally reasonable if the district court adequately explains the chosen sentence after considering the Sentencing Guidelines' nonbinding Chapter Seven policy statements and the applicable 18 U.S.C. § 3553(a) factors." *Slappy*, 872 F.3d at 207. If the sentence is reasonable, our review ends. If not, we assess whether the sentence is also "plainly unreasonable," in that the error is clear or obvious. *Crudup*, 461 F.3d at 439. "And even if a revocation sentence is plainly unreasonable, we will still affirm it if we find that any errors are harmless." *Slappy*, 872 F.3d at 207.

14

Walton argues that his 60-month revocation sentence is procedurally unreasonable—and plainly so—because the district court (1) did not ensure that Walton understood the alleged violations, (2) did not correctly grade the violations, and (3) did not adequately explain the sentence. We address each in turn.

## A.

First, Walton complains that the district court failed to take additional care to ensure that he, as a pro se litigant, understood the violations alleged in the amended petition. Although Walton frames this objection as a matter of procedural reasonableness, it relates not to his sentence but to the court's revocation decision. Yet nowhere does Walton argue the district court erred by revoking his supervised release based on his admission of the violations.[2]

Even if this argument were germane to his sentence, it fails. Walton admits that he specifically "waive[d]" having the amended petition read to him during the final revocation hearing. J.A. 126. But he asserts that the district court "should have read [it to him] in any event." Opening Br. 17. He cites no authority requiring a district court to read the revocation petition to a pro se defendant in every case, and neither Rule 32.1 nor our precedent requires as much. *Cf. United States v. Stehl*, 665 F.2d 58, 59–60 (4th Cir. 1981) (holding that the procedural requirements of "Rule 11 [of the Federal Rules of Criminal Procedure] ha[ve] no application to probation revocation proceedings").

---

[2] To revoke supervised release, a court need only find by a preponderance of the evidence that the defendant violated a supervised release condition. 18 U.S.C. § 3583(e)(3); *see United States v. Copley*, 978 F.2d 829, 831 (4th Cir. 1992).

To be sure, "supervised release cannot be revoked without a full hearing unless the defendant knowingly and voluntarily admits to the allegations against her and waives her rights under Rule 32.1." *Farrell*, 393 F.3d at 500. But that's what happened here. In compliance with Rule 32.1(b)(2)(A) and (B), the district court ensured Walton had an opportunity to review the amended petition, which provided "written notice of the alleged violation[s]" and "disclosure of the evidence against" him in the appended material. At the hearing, Walton confirmed that he had received an opportunity to review the amended petition and declined the court's offer to read it to him. In both his pro se motion and at the hearing, Walton discussed specific violations alleged in the amended petition. We cannot fault the district court for believing Walton was familiar with the alleged violations when he rejected the court's offer to read the petition to him and admitted the violations.

On appeal, Walton suggests that, because he did not mention the West Virginia drug charge in his pro se motion or during the revocation hearing, the court should have realized he "did not understand or acknowledge in any way that he was admitting [that] violation[]." Opening Br. 22. We disagree. The narrative in the amended petition describes the West Virginia charge for possession of marijuana with intent to distribute, and the relevant police report is attached to the petition. Additionally, at the hearing, the Government explicitly stated that Walton "was in possession of controlled substances in Wheeling, West Virginia." J.A. 137. Walton did not contest the Government's rendition of the facts, nor did he complain that the petition was "unclear as to which precise allegation is indeed the Grade A violation," as he does now for the first time on appeal. Opening Br. 20; *see United States v. Nelson*, 931 F.3d 588, 591 (7th Cir. 2019) (rejecting argument that defendant "did

16

not understand the charges against him" where "[t]he government also orally described the factual predicate of the allegations during the [revocation] hearing").

Simply put, the "totality of the circumstances" indicates that Walton "understood the allegations against [him]" and "knowingly and voluntarily admitted to the alleged violations." *Farrell*, 393 F.3d at 500 (finding that defendant knowingly and voluntarily admitted to allegations where she was "provided . . . with a copy of the petition on supervised release, which summarized all of [her] alleged violations" and her counsel stated, in the defendant's presence, that she admitted the "technical violations"). The district court's decision to accept Walton's "waiver" and not read the amended petition aloud in court provides no basis for vacating his revocation sentence.

B.

Second, Walton argues that the court procedurally erred in calculating his Guidelines policy statement range because none of his violations qualify as Grade A. When a defendant commits more than one violation of the conditions of supervision, "the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b) (2021). So long as one of Walton's violations qualifies as Grade A, his Guidelines policy statement range remains accurate.

Chapter Seven of the Sentencing Guidelines defines a Grade A violation to include "conduct constituting . . . a federal, state, or local offense punishable by a term of imprisonment exceeding one year that . . . (ii) is a controlled substance offense." U.S.S.G § 7B1.1(a)(1). A controlled substance offense includes "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the

17

manufacture, import, export, distribution or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." *Id.* § 4B1.2(b). A district court may find by a preponderance of the evidence that the defendant committed conduct constituting a federal, state, or local offense "whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct." *Id.* § 7B1.1 cmt. n.1; *see United States v. Wynn*, 786 F.3d 339, 343 (4th Cir. 2015); *United States v. Thompson*, 297 Fed. App. 211, 212–213 (4th Cir. 2008).

Violation five of the amended petition—which the parties agree corresponds to the facts underlying Walton's West Virginia drug charge—constitutes a Grade A violation. As the amended petition explains, Walton was charged with "Possession with Intent to Distribute Marijuana," J.A. 74, 96, in violation of West Virginia Code § 60A-4-401(a)(i), J.A. 94, which is punishable by more than one year in prison. The incident report included with the amended petition confirms that officers seized "approximately 13.5 pounds (6054 grams) of marijuana" and "[v]arious address books, papers and a white set of digital scales" from Walton's home. J.A. 96.

On appeal, Walton suggests that the exact charge is ambiguous because "the heading of this section [of the incident report] only says 'possess', not possess with intent to distribute." Opening Br. 21 (quoting J.A. 94). We are not persuaded. Beneath that heading, the incident report describes the offense as "Poss. With Intent to Deliver (I or II)" and identifies the relevant statute as West Virginia Code § 60A-4-401(a)(i), which prohibits manufacture, delivery, and possession with intent to manufacture or deliver, but

18

does not mention mere possession. J.A. 94. Moreover, by admitting the underlying conduct, Walton admitted to "conduct constituting" possession with intent to distribute, whether West Virginia charged him with that particular crime or not. U.S.S.G. § 7B1.1(a)(1); *see id.* § 7B1.1 cmt. n.1.

At oral argument, questioning from the Court inspired Walton to argue for the first time that his West Virginia offense was not a controlled substance offense under this Court's decision in *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022).[3] In *Campbell*, we vacated a defendant's sentencing enhancement on the ground that, applying the so-called categorical approach, his prior conviction for violating West Virginia Code § 60A-4-401(a) was not a controlled substance offense under the Sentencing Guidelines because the state statute also criminalized "an attempt to deliver a controlled substance," which was conduct outside the definition in U.S.S.G. § 4B1.2(b).[4] *Campbell*, 22 F.4th at 441–445. After argument, we requested supplemental briefing about whether Walton had forfeited reliance on *Campbell* and, if not, whether that decision affects our resolution of his appeal. Having considered the supplemental briefs, we conclude that Walton lost the opportunity to pursue this argument by not raising it in his opening brief on appeal.

---

[3] Counsel candidly admitted that he "didn't even think about the *Campbell* argument" before the Court raised it. Oral Argument 33:45–34:14.

[4] The Sentencing Commission has since amended Section 4B1.2 to include inchoate offenses. *See* U.S.S.G. § 4B1.2(d) (2023). "So today, a prior conviction under West Virginia's controlled substances statute qualifies as a 'controlled substance offense' . . . ." *United States v. Shields*, 126 F.4th 356, 358 n.2 (4th Cir. 2025).

"'It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned.'" *United States v. Boyd*, 55 F.4th 272, 279 (4th Cir. 2022) (quoting *United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004)); *see also Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief . . . ."). Necessarily, then, "we do not consider on appeal issues raised for the first time at oral argument." *United States v. Cornell*, 780 F.3d 616, 625 n.2 (4th Cir. 2015); *see also W. Va. CWP Fund v. Stacy*, 671 F.3d 378, 389 (4th Cir. 2011). To raise an argument for appellate consideration, an appellant must specifically state in his opening brief his "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(8)(A). Put another way, a party must "'develop [its] argument'" with more than "'a passing shot at the issue.'" *Grayson O Co.*, 856 F.3d at 316 (quoting *Brown v. Nucor Corp.*, 785 F.3d 895, 923 (4th Cir. 2015)); *see also Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 n.7 (4th Cir. 2006) (a single "conclusory" sentence in a brief is "insufficient to raise" an issue for appeal).

Merely identifying an appellate issue does not preserve every theoretical argument for relief on that issue. For example, in *United States v. Leeson*, the defendant appealed the district court's admission of expert testimony about statements from his fellow inmates. 453 F.3d 631, 635 (4th Cir. 2006). In his opening brief, the defendant challenged the evidentiary ruling "exclusively upon the basis that the statements constituted hearsay and did not otherwise qualify for admission under Rule 703." *Id.* at 638 n.4. But in a subsequent Rule 28(j) letter, the defendant cited *Crawford v. Washington*, 541 U.S. 36

20

(2004), "to argue that, . . . such out-of-court statements are barred by the Sixth Amendment's Confrontation Clause." *Id.* This Court held that the "argument based upon *Crawford* [was] waived" because the defendant did not present it in his opening brief, even though "*Crawford* was readily available at the time." *Id.* We have drawn the line of appellate preservation similarly in other cases. *See*, *e.g.*, *United States v. Huskey*, 90 F.4th 651, 665 (4th Cir. 2024) (holding that defendant "forfeited" arguments that the jury instructions ran afoul of a new Supreme Court precedent despite raising a different argument based on that precedent in his opening brief); *Cornell*, 780 F.3d at 625 & n.2 (holding that defendants waived argument that a jury instruction was improper because it failed to conform to the indictment, despite challenging the same jury instruction on different grounds in their opening brief).

Here, Walton abandoned any argument that his West Virginia conduct did not qualify as a controlled substance offense under the Guidelines by not raising it in his opening brief even though the argument, and the *Campbell* decision specifically, was available to him at the time. In his opening brief, Walton argued that "violation number five was . . . not a grade A violation" because the West Virginia State Police incident report was "ambigu[ous]." Opening Br. 20–21. At no point in his brief did Walton claim that his West Virginia conduct did not qualify as a controlled substance offense, much less develop an argument along those lines or cite *Campbell* or any authority supporting that view.

21

Under our longstanding precedent, that constitutes abandonment.[5]  Seeing no miscarriage of justice or countervailing institutional interest, we will not address this "wholly different argument" first broached at oral argument upon questioning by the Court.  *Leeson*, 453 F.3d at 638 n.4; *A Helping Hand, LLC v. Baltimore Cnty.*, 515 F.3d 356, 369 (4th Cir. 2008); *see also United States v. Oliver*, 878 F.3d 120, 127 (4th Cir. 2017) ("When the court raises a forfeited issue sua sponte, it undermines the principle of party presentation and risks becoming a third advocate.").[6]

## C.

Third and finally, Walton argues his revocation sentence is plainly procedurally unreasonable because the district court did not mention the statutory sentencing factors or adequately explain its sentence.  Because Walton did not object in the district court or argue "for a sentence different than the one ultimately imposed," our review is for plain error.[7]

---

[5] Accordingly, the "issue" whether Walton's West Virginia conduct qualifies as a controlled substance offense is not "properly before the court." *Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 783 F.3d 976, 980 (4th Cir. 2015) (internal quotation marks omitted).  If it were, of course, we would "retain the independent power to identify and apply the proper construction of governing law" to that issue, whether or not the parties "identif[ied] the applicable legal rule." *Id.* (internal quotation marks omitted).  The dissent conflates these two concepts. *See* Diss. Op. 38–40.

[6] In any event, *Campbell* would not help Walton.  His undisputed conduct— possessing 13.5 pounds of marijuana and digital scales—constitutes possession with intent to distribute in violation of 21 U.S.C. § 841, which is punishable by more than a year in prison and qualifies as a "controlled substance offense" under the Guidelines. *See United States v. Groves*, 65 F.4th 166, 174 (4th Cir. 2023).  It makes no difference that Walton was never charged federally. *See* U.S.S.G. § 7B1.1 cmt. n.1.

[7] At the end of the hearing, Walton's appointed stand-by counsel objected to the sentence on "procedural grounds" and "substantive grounds." J.A. 138.  When the district

*United States v. Lynn*, 592 F.3d 572, 578 (4th Cir. 2010); *see United States v. Webb*, 738 F.3d 638, 640 (4th Cir. 2013).

The district court's sentencing explanation was not unreasonable, much less "plainly" so. *Crudup*, 461 F.3d at 439. "A court need not be as detailed or specific when imposing a revocation sentence as it must be when imposing a post-conviction sentence, but it still must provide a statement of reasons for the sentence imposed." *United States v. Thompson*, 595 F.3d 544, 547 (4th Cir. 2010) (internal quotation marks omitted). In some cases, however, "a district court's reasons for imposing a within-range sentence may be clear from context, including the court's statements to the defendant throughout the sentencing hearing." *Id.* (citation omitted); *see Rita v. United States*, 551 U.S. 338, 356 (2007) ("[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation.").

Here, although the district court did not tick through the applicable Section 3553(a) factors, it addressed their contours in discussing Walton's within-Guidelines revocation sentence. *See* 18 U.S.C. § 3583(e). The court considered "the nature and circumstances of the offense and the history of the defendant," *id.* § 3553(a)(1), noting that "[Walton] has four federal convictions" and has only "been out about six and a half years since [he was]

---

court inquired what the procedural objection was, counsel replied he was "just preserving the objection to file the appeal" because "[w]hen we get into plain error review on appeal, things get real crazy." J.A. 138. This vague objection is insufficient to escape plain error review. *See United States v. Covington*, 65 F.4th 726, 730 (4th Cir. 2023) ("To preserve an objection at sentencing, a defendant must raise the issue to the district court with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." (internal quotation marks omitted)).

26 years old," J.A. 132–133.  The court addressed the need for the sentence imposed "to afford adequate deterrence from criminal conduct" and "protect the public from further crimes of defendant."  18 U.S.C. § 3553(a)(2)(B), (a)(2)(C).  Speaking to Walton directly, the court remarked that "[y]ou don't really give any indication of stopping," to which Walton replied, "the record speaks for itself," "[t]he judge is correct as to what he's saying," and "if somebody is going to give me a life sentence, I'll try to bribe the whole courthouse."  J.A. 133.  The court's sentencing also comported with the Chapter 7 Policy Statements and their philosophy of sanctioning "primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."  U.S.S.G. ch. 7, pt. A(3)(b); *see also Webb*, 738 F.3d at 641.

And unlike in cases where a district court must "address the parties' nonfrivolous arguments in favor of a particular sentence," *Slappy*, 872 F.3d at 208, Walton made no such arguments.  The district court "heard and considered the evidence and argument," *Rita*, 551 U.S. at 359, and "[b]ased upon Mr. Walton's admissions," which were both extensive and unequivocal, J.A. 137, imposed a statutory maximum sentence of 60 months' imprisonment within Walton's properly calculated Guidelines policy statement range.  Walton's sentence is not unreasonable.

## V.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

24

GREGORY, Circuit Judge, concurring in part and dissenting in part:

Eric Walton did not knowingly and voluntarily waive his right to an attorney at his supervised release revocation hearing and thus the district court erroneously allowed him to proceed pro se. For that error alone, I would reverse the district court and remand for re-sentencing. But that is not all: His supervised release revocation hearing was riddled with procedural errors, all of which the majority ignores. Because the majority fails to appreciate the magnitude of these errors, I must respectfully dissent.[1]

I.

While the Sixth Amendment right to counsel does not extend to supervised release revocation hearings, *see Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973), defendants still enjoy a statutory right to counsel at such hearings, Fed. R. Crim. P. 32.1(b)(2)(D). To waive this statutory right, a defendant must act "knowingly and voluntarily." *United States v. Farrell*, 393 F.3d 498, 500 (4th Cir. 2005). I disagree with the majority's holding that Walton waived his right to counsel.

First, I would clarify that the proper standard of review for waivers of counsel in the supervised release context is de novo review. And, under that standard, I would find that Walton did not waive his right to counsel.

---

[1] I do, however, concur with and join the majority's holding that we have jurisdiction to hear this appeal. *See* Maj. Op. at § II.

25

A.

Before today, this Court has not opined on the proper standard of review when a district court allows a defendant to proceed pro se in a supervised release revocation, and our sister courts have split on this question. *Compare United States v. Owen*, 854 F.3d 536, 542 (8th Cir. 2017) (applying abuse of discretion standard), *and United States v. Boultinghouse*, 784 F.3d 1163, 1172, 1177 (7th Cir. 2015) (applying abuse of discretion standard), *with United States v. Spangle*, 626 F.3d 488, 494 (9th Cir. 2010) (applying harmless error review), *with United States v. Manuel*, 732 F.3d 283, 290 (3d Cir. 2013) (applying plenary review). Adopting an abuse of discretion standard, Maj. Op. at § III.A, the majority joins the wrong side of the circuit split. I would instead join the Third Circuit in applying de novo review. *See Manuel*, 732 F.3d at 290.

This Court applies a de novo standard for the waiver of the right to counsel under the Sixth Amendment. *United States v. Ductan*, 800 F.3d 642, 648 (4th Cir. 2015). While it is true that the right to counsel in a revocation hearing derives from statute, not the Constitution, the core of the analysis is the same: Did the defendant knowingly and voluntarily waive his right to appeal? As such, it is a question of law subject to de novo review. And the fact that the question involves a statutory right does not warrant a diminished or different standard of review. This Court and others have recognized de novo review as the proper standard of review for the waiver of a statutory right in the criminal context. *United States v. Manigan*, 592 F.3d 621, 626 (4th Cir. 2010) ("The issue of whether a defendant has waived his [statutory] right of appeal . . . is a matter of law that we review de novo.") (cleaned up); *United States v. Davenport*, 151 F.3d 1325, 1327 n.1

26

(11th Cir. 1998) (applying de novo review to the question of whether a defendant waived his statutory right to review his Presentence Investigation Report). I disagree with the majority's decision to deviate from this trend in reviewing the waiver of other important statutory rights in the criminal context. I would apply a de novo review.

B.

Applying this standard, I would hold that the district court failed to adequately inquire into Walton's waiver of the right to counsel. I would, therefore, remand for resentencing.

Given the uniquely informal nature of revocation proceedings, district courts need not engage in as formal or as searching an inquiry for waiver as they must in the context of the Sixth Amendment. *See, e.g.*, *Faretta v. California*, 422 U.S. 806 (1975). For example, "[a]lthough a thorough colloquy with the district court may be the most precise means of evaluating the voluntariness of a waiver, the failure of the district court to engage in a comprehensive colloquy is not, of itself, fatal to the defendant's waiver." *Hodges*, 460 F.3d at 652. However, the court must nevertheless assess whether, "under the totality of the circumstances," the defendant's "waiver of his right to counsel and his decision to proceed pro se were knowing and voluntary." *United States v. Tolbert*, 373 F. App'x 363, 364 (4th Cir. 2010) (per curiam); *see also Hodges*, 460 F.3d at 651–52 (discussing "totality of the circumstances" standard).

As part of the totality of the circumstances analysis, our sister circuits have considered a range of factors. For example, they have instructed courts to consider (1) whether the defendant was aware of the nature of and potential penalties associated with the charges

27

against him; (2) whether the district court warned the defendant about the benefits of proceeding with counsel and disadvantages of proceeding pro se; (3) the defendant's familiarity with the criminal process and his rights; (4) the presence of stand-by counsel; and (5) whether there is any "evidence or indicia of coercion, gamesmanship, or improper forces at play." *Hodges*, 460 F.3d at 652–53; *see Boultinghouse*, 784 F.3d at 1173. Key to this analysis is whether the defendant knew the risks associated with proceeding pro se. For waiver to be knowing, the court must provide the defendant with "a concrete illustration of why he might be at a disadvantage without counsel . . . [and] confirm[] that [the defendant] appreciated what was at stake in the revocation proceeding in terms of his liberty." *Id.* For instance, the Seventh Circuit only found that a defendant knowingly waived his right to counsel in a revocation hearing once it was satisfied that the defendant "appreciated what was at stake, understood the nature of the charges, and knew what the factual issues were." *Id.* at 1175. A defendant must have "some sense of what a lawyer might be able to do better than he himself could." *Id.*

Here, the district court failed to conduct a sufficiently thorough inquiry into Walton's waiver and therefore failed to ascertain if his wavier was knowing and voluntary. The reason for this is simple: The district court made *no* inquiry into Walton's wavier. In fact, all the court asked was how Walton wanted to proceed, to which Walton responded: "Without counsel. Stand-by counsel, yes, sir." J.A. 127. The district court then immediately agreed to Walton's request. *Id.*

The court made no inquiry into Walton's history or experience, his understanding of the criminal justice system, nor the context of his decision to proceed pro se. *See, e.g.,*

28

*Hodges*, 460 F.3d at 652–53. The court failed to do anything to ensure that Walton understood the risks of proceeding pro se and the advantages of proceeding with counsel. *See, e.g.*, *Boultinghouse*, 784 F.3d at 1173. The district court's obligation to inform and make inquiry of Walton fell woefully short of the procedural minimum.

The fact that Leary purportedly served as stand-by counsel does not rectify this inadequacy. To begin with, Leary did not seem to understand that he was stand-by counsel for most of the hearing, and the district court only clarified Leary's role *after* Walton confessed to the violations. *See* J.A. 132, 134–36. And, in any event, Leary, by his own admission, was not prepared to handle the case. Only appointed the day before the hearing, Leary candidly informed the district court that he could not advocate on behalf of his client "because I walked in here five minutes before the hearing and know nothing about this matter other than what I've quickly read here. So if the Court wants me to serve as an advocate, I'm not in a position to do that." J.A. 135; *contrast to Hodges*, 460 F.3d at 653 (noting that appointed counsel "remained available to assist [the defendant] throughout the proceeding").

Given the district court's lack of inquiry into Walton's waiver, I would hold that the district court failed to ascertain if Walton knowingly and voluntarily waived the right to counsel. For that reason alone, I would remand for re-sentencing.

## II.

Next, Walton points to a litany of procedural errors in his revocation hearing in arguing that his sentence was plainly unreasonable. This Court employs a deferential

29

standard of review to revocation sentences and will only reverse if the sentence is plainly unreasonable. *United States v. Crudup*, 461 F.3d 433, 439 (4th Cir. 2006); *United States v. Patterson*, 957 F.3d 426, 436 (4th Cir. 2020). The plainly unreasonable inquiry consists of two steps. First, this court must "determine whether [the sentence] is unreasonable at all," i.e., whether the district court erred. *United States v. Thompson*, 595 F.3d 544, 546 (4th Cir. 2010). Second, this court must determine if the district court's error was "plainly" unreasonable. *Id.* at 547. "To determine whether a sentence is plainly unreasonable, this Court looks to the definition of 'plain' used in plain-error analysis." *Id*. at 547–48. So, "[f]or a sentence to be plainly unreasonable, [ ]it must run afoul of clearly settled law." *Id*.

In my view, the entire revocation proceeding was marked by procedural error that clearly violated our and Supreme Court precedent. First, the district court never considered the grade for each of Walton's violations and failed to calculate the appropriate Guidelines range. Second, compounding this error, the district court appeared to incorrectly assume that Walton committed a Grade A violation and thus imposed too high of a sentence. Third, the district court failed to provide much of any explanation for its ultimate sentencing decision. Each of these procedural violations was plainly unreasonable and independently serves as grounds for reversal. Inexplicably, the majority waves off these violations. Because these errors independently—and without a doubt, together—deprived Walton of any of the procedural safeguards to which he was entitled, I must dissent.

## A.

I would hold that the district court's sentence is plainly unreasonable because it failed to consider the grade for each of Walton's violations and failed to calculate the

Guidelines range.  For this reason alone, I would vacate Walton's sentence and remand for new sentencing.

In imposing a revocation sentence, a district court "*must* consider the [Sentencing Guidelines Manual's] Chapter Seven policy statements and other statutory provisions applicable to revocation sentences." *Thompson*, 595 F.3d at 547 (emphasis added); *United States v. Moulden*, 478 F.3d 652, 656 (4th Cir. 2007) ("Of course, as always, the sentencing court *must* consider the policy statements contained in Chapter 7, including the policy statement range.") (emphasis added).  To determine advisory revocation ranges, the court must first determine the defendant's criminal history and then the "grade" of each violation. U.S.S.G. § 7B1.4.[2]  When, like here, multiple violations are at issue, "the grade of the violation is determined by the violation having the most serious grade."  U.S.S.G. § 7B1.1(b).

Here, the revocation hearing is devoid of any findings regarding the Guidelines range or the proper violation gradations.  The only reference to the Guidelines comes from the government.  *See* J.A. 136 (counsel stating "[t]he government actually would be asking for a sentence within the high range of the range of imprisonment of 63 months.").  But the district court never stated that it adopted that as the Guidelines range nor its reasoning.

---

[2] When determining the proper Guidelines range, a court must look to the Sentencing Guidelines Manual in effect on the date that the offense was committed. *United States v. Knight*, 606 F.3d 171, 177 (4th Cir. 2010).  Walton committed his probation violations in February 2022 and therefore the 2021 version of the Guidelines Manual was in effect.  Unless noted otherwise, all citations are to the 2021 Guidelines Manual.

31

And the district court never explained which violations it considered to be Grade A violations or why they were.

Because this Court's long-standing precedent requires district courts to calculate the Guidelines range, this error was plain. *United States v. Padgett*, 788 F.3d 370, 373 (4th Cir. 2015) ("The sentencing court must consider both the policy statements and the applicable policy statement range found in Chapter 7 of the Sentencing Guidelines manual.") (cleaned up); *see also Gall v. United States*, 552 U.S. 38, 51 (2007) (describing a district court's failure to calculate the Guidelines range in sentencing as a "significant procedural error").

For this reason alone, I would find that the district court procedurally erred.

B.

Next, had the district court properly calculated the Guidelines range, it would have discovered that it was sentencing Walton far above what the Guidelines suggest.[3] The government argues that Walton committed at least two "controlled substance offenses," warranting a Grade A violation, Resp. Br. at 16–17, which corresponds with a Guidelines range of fifty-one to sixty-three months, U.S.S.G. § 7B1.4(a). But neither proffered

---

[3] Applying Walton's criminal history score (VI), a Grade B violation would correspond with a Guidelines-range of twenty-one to twenty-seven months. U.S.S.G. § 7B1.4(a).

offense is a Grade A violation.  Because the district court sentenced Walton within what could only be an incorrectly calculated Guidelines range[4] this too was a procedural error.

For an offense to be a Grade A violation, it must be:

> (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that
>
> > (i)    is a crime of violence,
> >
> > (ii)   *is a controlled substance offense*, or
> >
> > (iii)  involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or
>
> (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years.

U.S.S.G. § 7B1.1(a)(1) (emphasis added).  Section 7B1.1 adopts § 4B1.2(b)'s definition of "controlled substance offense."  U.S.S.G. § 7B1.1 cmt. 3.  That section, in turn, defines a "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that [ ] prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."[5]  U.S.S.G. § 4B1.2(b), (b)(1).

---

[4] Since the district court failed to calculate the Guidelines or explain its reasoning, it is difficult to know what exactly the district court did or intended to do.  This ambiguity highlights the seriousness of the district court's procedural error in not clearly setting forth its findings.

[5] The Guidelines have since been amended to include "the possession of a controlled substance (or counterfeit substance) with the intent to manufacture, import, export, or dispense" within the definition of a "controlled substance offense."  *See* 2024 U.S.S.G. § 4B1.2(b)(1).

33

On appeal, the government argues that two of Walton's violations—Possession with Intent to Distribute Marijuana in violation of West Virginia law, and Criminal Transportation of Drug Proceeds in violation of Kansas law—are Grade A violations because they are controlled substance offenses. However, neither violation satisfies the definition of a controlled substance offense, nor do they meet any of the other criteria for a Grade A violation.

i.

Finding that Walton committed a controlled substance offense, the majority errs by looking to Walton's conduct and deeming him guilty of committing a controlled substance offense, despite the fact that neither the government nor the district court identified a controlled substance offense as part of his revocation proceeding. Maj. Op. at 22 n.6; Gov. Supp. Br. at 8. This is wrong.

The majority asserts that Walton *could* have been (but was not) charged with the federal offense of possession with intent to distribute, which is a categorically a controlled substance. Maj. Op. at 22 n.6. In support, the majority cites the Guidelines' commentary which states that "[t]he grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted [of] . . . . Rather, the grade of the violation is to be based on the defendant's actual conduct." U.S.S.G. § 7B1.2 cmt. 1. But this merely means that the government need not go through a formal criminal process to demonstrate that the defendant committed a violation; the commentary does not

34

give the majority license to search the record for possible, uncited offenses.[6] The question of whether a defendant committed a Grade A violation looks to the offense that the probation officer cited and the district court found him responsible for committing, not whatever offenses the government or this Court *post hoc* determines he could have been held accountable for committing. *See United States v. Carter*, 730 F.3d 187, 192–93 (3d. Cir. 2013) (the district court and the government must indicate the "particular 'crime of violence' for which [the defendant] was responsible."); *United States v. Willis*, 795 F.3d 986, 993 n.5 (9th Cir. 2015) ("in determining whether the defendant has committed a crime of violence for purposes of § 7B1.1(a)(1)(A)(i), a court must identify the particular crime for which the defendant was responsible, and determine whether that crime, rather than the defendant's conduct, contains an 'element of force.'"). "It is therefore not enough to say that a defendant's actions [constituted a Grade A violation] without pointing to a crime containing those same elements." *Carter*, 730 F.3d at 192–93.

And, to determine if a crime is a "controlled substance offense" in the sentencing context, we apply the categorical approach. *United States v. Campbell*, 22 F.4th 438, 441 (4th Cir. 2022). Under this approach, "[i]f the 'least culpable' conduct criminalized by the

---

[6] In any event, "if the Application Note really required courts to grade violations based *only* on actual conduct, and ignored the 'offense under federal or state law' that the defendant violated, the Note would clash with the text, and the text would prevail." *United States v. Garcia-Cartagena*, 953 F.3d 14, 24 (1st Cir. 2020); *see also United States v. Mitchell*, 120 F.4th 1233, 1241 (4th Cir. 2024) ("when commentary is inconsistent with an unambiguous guideline—for example, if the commentary would expand the application of a Guideline beyond its plain meaning—the Sentencing Reform Act itself commands compliance with the guideline.") (cleaned up).

predicate offense statute does not qualify as a 'controlled substance offense,'" any offense pursuant to the statute is not a controlled substance offense. *Id*.

I find no reason why we should apply the categorical approach when determining if a crime is a "controlled substance offense" for purposes of sentencing but not for purposes U.S.S.G. § 7B1.1. Indeed, as the First Circuit put it, it would take "some high-level hocus-pocus" to find that § 4B1.2's definition of "controlled substance offense" is a "chameleon[] that var[ies] [its] colors (to mean 'specific acts' in § 7B1.1(a) but a 'generic' crime in other contexts) depending on what guideline puts [it] to work." *United States v. Garcia-Cartagena*, 953 F.3d 14, 24 (1st Cir. 2020).

Applying the categorical approach in the supervised release context is amply supported by our precedent. Indeed, we routinely apply the categorical approach in determining if a violation is a Grade A violation. *See United States v. Simmons*, 917 F.3d 312, 316–17 (4th Cir. 2019) ("To determine whether [the offense of conviction] is a 'crime of violence' under the Sentencing Guidelines [for purposes of determining the grade of a supervised release violation], we apply the familiar categorical approach"); *United States v. Mack*, 56 F.4th 303, 305 (4th Cir. 2022) (same). We explicitly held that a district court erred when it examined the defendants "actual conduct," rather than the elements of the offense, in determining the grade of a defendant's supervised release violation. *United States v. Doctor*, 958 F.3d 226, 237–38 (4th Cir. 2020) *contra* Maj. Op. at 22 n.6. As we explained, "this Court has applied the categorical approach to decide whether a state offense is a crime of violence under the Guidelines . . . . Accordingly, application of the

36

conduct-specific approach . . . [to determine if an offense is a Grade A violation] is not proper." *Doctor*, 958 F.3d at 237–38.

Nor does *United States v. Wynn*, the only case law the majority marshals, support its position. 786 F.3d 339 (4th Cir. 2015); Maj. Op. at 22 n.6. *Wynn* only stands for the proposition that the district court may consider a defendant's earlier conviction(s) to conclude that he would be subject to a sentence of greater than one year as a recidivist offender. 786 F.3d at 343–44; *see also United States v. Ramos*, 979 F.3d 994, 1000 (2d Cir. 2020) (citing *Wynn* for the proposition that "a recidivism enhancement is fair game for a sentencing court to consider when assessing the maximum potential penalty for an offense constituting a violation of supervised release."). But it does not excuse the government from identifying a statutory crime at the revocation proceeding and categorically demonstrating that it is a controlled substance offense.

ii.

To begin, and in yet another example of procedural error, it is not clear under which West Virginia statute Walton was charged. However, my best guess is that he was charged with violating W. Va. Code § 60A-4-401(a) (stating "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance"). In *United States v. Campbell*, this Court found that, under the version of the Guidelines then in effect, convictions pursuant to W. Va. Code § 60A-4-401(a) are not "controlled substance offenses" because they include inchoate offenses. 22 F.4th at 441,

37

449.[7]   Therefore, under binding Fourth Circuit precedent, Walton's West Virginia offense was *not* a controlled substance offense when he committed it.   Furthermore, the highest statutory sentence for Walton's conviction is five years, far below the twenty-year threshold to independently render it a Grade A violation.   W. Va. Code § 60A-4-401(a)(ii); *see also* W. Va. Code § 60A-2-204(d) (classifying marijuana as a Schedule I substance). Accordingly, I would find that the district court plainly erred to the extent it considered this offense a Grade A violation.

In spite of our clear precedent, the majority finds that Walton waived the argument that *Campbell* controls.   Maj. Op. at 19–22.   I profoundly disagree.   It is true that courts follow the principle of party presentation.   *Greenlaw v. United States*, 554 U.S. 237, 244 (2008).   This principle is based on the idea that "parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief."   *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (cleaned up).   But "[t]he party presentation principle is supple, not ironclad," and the Supreme Court has observed that "[t]here are no doubt circumstances in which a modest initiating role for a court is appropriate."   *Id.* at 376.   Following the Supreme Court's teachings, this Court has warned that "we cannot sacrifice the integrity of our jurisprudence to the party presentation principle."   *Short v. Hartman*, 87 F.4th 593, 604 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2631 (2024); *see also Dan Ryan Builders, Inc. v. Crystal Ridge*

---

[7] It is true that *Campbell* was in the context of a sentencing career-offender enhancement.   But both the career-offender enhancement and Grade A violations rely on the same definition of "controlled substance offense."   *See Campbell*, 22 F.4th at 441 (considering the definition of U.S.S.G. § 4B1.2(b)).

*Dev., Inc.*, 783 F.3d 976, 980 (4th Cir. 2015) (stating that "the [Supreme Court has n]ever suggested that the party presentation principle constrains a court's fundamental obligation to ascertain controlling law").

This is especially true when a party has properly raised an issue but failed to raise all legal theories in support of its argument. As we have explained, "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Short*, 87 F.4th at 604 (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)).

This is what happened here. Despite the majority's claim to the contrary, Maj. Op. at 20–21, Walton properly raised the issue of whether he committed a Grade A violation. He argued that his alleged violation of W. Va. Code § 60A-4-401(a) "was also not a grade A violation" and devotes a page to that discussion. Opening Br. at 20. While he did not explicitly point to *Campbell* as the basis for his contention, it is within this Court's power to consider other theories in support of that argument.[8] Finally, not only is it within our power to consider *Campbell*, but it is also our duty to do so. *Campbell* is on-point binding precedent, directly governing the question before the Court. *See, e.g.*, *Payne v. Taslimi*, 998 F.3d 648, 654 (4th Cir. 2021) ("when a panel of our Court looks horizontally to our

---

[8] Nor does considering it undermine the purpose of the party presentation principle—to allow the parties to determine and craft their best arguments. Walton's counsel admitted that he had inadvertently failed to raise the argument in Walton's briefing. When *Campbell* was raised at oral argument, counsel described it as an "oops moment." Oral Argument at 33:21.

39

own precedents, we must apply their commands as a mechanical mandate.").  We cannot simply jettison it because Walton's lawyer inadvertently did not cite it, as "[a] party's failure to identify the applicable legal rule certainly does not diminish a court's responsibility to apply that rule."  *Dan Ryan Builders, Inc.*, 783 F.3d at 980.

I would therefore consider *Campbell* and find that W. Va. Code § 60A-4-401(a) was not a controlled substance offense at the time of the revocation hearing.  Therefore, Walton's West Virginia offense was not a Grade A violation and the district court plainly erred finding the contrary.

iii.

Walton's Kansas offense is also not a "controlled substance offense."  Walton pled guilty to one count of Criminal Transportation of Drug Proceeds, in violation of Kan. Stat. Ann. § 21-5716(b).  J.A. 103.  Though there does not appear to be binding precedent holding that this statute is not a controlled substance offense, its plain text makes clear that it is not.  That statute states:

> It shall be unlawful for any person to distribute, invest, conceal, transport or maintain an interest in or otherwise make available anything of value which that person knows is intended to be used for the purpose of committing or furthering the commission of any crime in K.S.A. 21-5701 through 21-5717 [crimes involving controlled substances], and amendments thereto, or any substantially similar offense from another jurisdiction.

Kan. Stat. Ann. § 21-5716(b).  While this statute may relate to controlled substances, it is not a "controlled substance offense" pursuant to the Sentencing Guidelines because it does not categorically criminalize the "the manufacture, import, export, distribution, or dispensing . . . or the possession of a controlled substance."  *See* U.S.S.G. § 4B1.2(b),

40

(b)(1). Furthermore, violations of this provision bring with them a sentence of less than twenty years. *See* Kan. Stat. Ann. § 21-6805(a) (setting forth a maximum sentence of sixteen months for a nonperson level 5 drug felony); U.S.S.G. § 7B1.1(a)(1)(B). Based on this clear reading of the statute and its penalty, I would hold that it is plain that this is not a controlled substance offense and thus not a Grade A violation.

*      *      *

Because the district court appeared to rely on an incorrectly calculated Guidelines range that considered Walton as having been charged with a Grade A violation, the district court's sentence is plainly unreasonable.

C.

Finally, the district court failed to provide any reasoning for the revocation sentence that it imposed in contravention of this Court's precedent. Again, for this reason alone, I would hold that the district court plainly procedurally erred and remand the case for resentencing.

When imposing a revocation sentence, a district court must "adequately explain the chosen sentence," *Thompson*, 595 F.3d at 547 (quoting *Gall*, 552 U.S. at 51), and "must provide a statement of reasons for the sentence imposed," *Moulden*, 478 F.3d at 657. In imposing a revocation sentence, district courts are required to consider various factors set forth in § 3553(a).[9] 18 U.S.C. § 3583(c). While it is true that "a court need not robotically

---

[9] These factors are: "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct," *id.* at (a)(2)(B); "the need

41

tick through § 3553(a)'s every subsection," *United States v. Montes-Pineda*, 445 F.3d 375, 380 (4th Cir. 2006) (cleaned up), a revocation sentence only "passes procedural muster if it is supported by a sufficient explanation so that we may effectively review the reasonableness of the sentence," which "must encompass an assurance that the sentencing court considered the applicable sentencing factors," *United States v. Gibbs*, 897 F.3d 199, 204 (4th Cir. 2018) (cleaned up).  In reviewing the district court's statement of reasons, this Court may consider the "court's statements to the defendant throughout the sentencing hearing," not just those made at the time of imposition of the sentence.  *Thompson*, 595 F.3d at 547.

A district court's failure to explain the reason behind its sentence is plainly unreasonable. *Thompson*, 595 F.3d at 547 ("A district court commits significant procedural error where it fails to adequately explain the chosen sentence.") (cleaned up); *see also United States v. Bolds*, 511 F.3d 568, 580 (6th Cir. 2007) ("Reversible procedural error occurs [on the revocation of supervised release] if the sentencing judge fails to set forth enough of a statement of reasons to satisfy the appellate court that he . . . has a reasoned basis for exercising his own legal decision making authority.") (cleaned up).

---

for the sentence imposed . . . to protect the public from further crimes of the defendant," *id*. at (a)(2)(C); "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *id.* at (a)(2)(D); "the kinds of sentence and the sentencing range established for [in the Guidelines and by statute]," *id.* at (a)(4); "any pertinent policy statement [in the Guidelines]," *id.* at (a)(5); "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id.* at (a)(6); and "the need to provide restitution to any victims of the offense," *id.* at (a)(7).

The district court here failed to provide an adequate statement of reasons in support of the sentence it imposed. During the revocation hearing, the district court remarked on Walton's extensive criminal history and, as the government noted, observed that Walton did not "really give any indication of stopping." J.A. 133; *see also* J.A. 132. When imposing Walton's sentence, the district court stated:

> Based upon Mr. Walton's admissions, it is the judgment of this Court that the defendant, Eric Arthur Walton, is remanded to the custody of Bureau of Prisons to serve a sentence of 60 months in [the drug offenses case], followed by five years of supervised release.
>
> In [the jury tampering case], I will impose a sentence of 24 months, followed by no supervision, and that is to run concurrently with the 60 months on the [drug offense] case.

J.A. 137. The district court provided no further reasoning for its sentence.

The district court's observations regarding Walton's criminal history are simply not enough to allow this Court to review the reasonableness of the sentence imposed. *See, e.g.*, *United States v. Slappy*, 872 F.3d 202, 209 (4th Cir. 2017) (holding that a district court's statement that the sentence was "imposed to afford adequate deterrence" and that it was based on "evidence that [the defendant] doesn't respect The Court" was insufficient) (cleaned up). The district court did not consider Walton's history or characteristics beyond his criminal history nor any of the other statutorily enumerated factors. While Walton's admissions and the court's observations about his criminal history may be sufficient to support the finding that some incarceration was appropriate, they fail to explain why a sentence of sixty months was appropriate.

Because the district court failed to adequately explain the reasoning for the sentence imposed, I would hold that it procedurally erred.

### III.

The district court committed numerous procedural errors that warrant resentencing. Thus, I must respectfully dissent.